HANS HELMUT VORHAUER, Appellant, v. STATE OF DELAWARE, Appellee,

(*July* 27, 1965)

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

*Henry A. Wise, Jr.,* for appellant.

*Richard I. G. Jones,* Deputy Atty. Gen., for the State.

Supreme Court of the State of Delaware, No. 59, 1962.

HERRMANN, Justice.

The defendant Hans Helmut Vorhauer was convicted and sentenced on a charge of burglary in the fourth degree in violation of 11 *Del. C.* Sec. 395.

This appeal brings up for review the admissibility in evidence of an oral inculpatory statement given by the defendant to the police during an alleged illegal detention.

I.

The uncontroverted dispositive facts are as follows:

The defendant was arrested in his home near Wilmington by State Police officers Lt. Donald J. O'Connor, Det. Sgt. Thomas F. Buckmaster and Det. William B. Fugate. The arrest took place on the night of August 21, 1961 at 11:15 o'clock. The defendant was 18 years of age, born in Germany, with education limited to the eleventh grade. He was alone in the house in which he lived with his mother, apparently ready to retire. The officers showed the defendant a warrant for his arrest issued by Justice of the Peace Maurice F. Fitzharris under date of August 1, 1961[1] pursuant to the complaint of Det. Fugate. The warrant charged the defendant with breaking and entering Gaylords Discount Department Store on August 1, 1961 with intent to commit larceny. In usual form, the warrant was addressed "To Any Constable" of New Castle County commanding him "forthwith to apprehend" the defendant and "bring him before me [Magistrate Fitzharris] or some other Justice of the Peace for the County aforesaid that he may be

---

[1] There is no explanation in the record as to why the warrant sworn to and issued August 1, 1961 was not executed until almost midnight on August 21.

examined touching the premises and to be further dealt with as to law and justice shall appertain." The warrant also commanded the Constable to summon the complainant Fugate "to appear and give evidence relating to the subject matter of the complaint."

In making the arrest, the officers asked permission to search the house and the defendant consented; but nothing was found. Meanwhile, the defendant's mother returned home. She conversed with the defendant and with one of the officers and learned of the charges against her son.

The officers then took the defendant to State Police Troop No. 1 Headquarters at Penny Hill (hereinafter "Troop Headquarters") and he was placed in one of the two cells located in the basement of the building. The cells were for temporary detentions only; there were no facilities for longer incarcerations. The other cell was occupied by Franklin Lee Minor, held as a co-defendant for the same offense.

At about 1:30 A.M., Det. Fugate sat down with the defendant in or near the cell and attempted to interrogate him and to obtain a written statement from him regarding the Gaylord burglary. The defendant refused to answer all questions, repeating "I have nothing to say until I am further advised by my attorney."

"Processing" at Troop Headquarters, consisting of fingerprinting, photographing and other administrative details, took about 20 minutes. At about 3:30 A.M., during the processing, the defendant and Minor were permitted to confront each other. Minor made accusatory remarks to the defendant who did not reply. During this period, the officers, in a friendly way, urged the defendant to confess, showing him items of evidence from time to time.

At about 5:00 A.M., the defendant was taken before Magistrate Fitzharris by Fugate and Buckmaster. Buckmaster "related the circumstances" of the case to the Magistrate but neither of the officers was sworn. The defendant was not informed by the Magistrate of his right to retain counsel and of his right to have a preliminary hearing, as

is required by Superior Court Criminal Rule 5(b), *Del. C.* Ann.; nor did the Magistrate hear "evidence", or give the defendant an opportunity to cross-examine witnesses against him and introduce evidence in his own behalf, as is required by Superior Court Criminal Rule 5(c); nor did the Magistrate—"commit" the defendant or discharge him, as is required by Rule 5(c).[2] The defendant's uncontradicted testimony as to the scope of the "hearing" was:

"Well, they took me in front of Magistrate Fitzharris. He asked me my name; I told him. He said, 'You are charged with the burglary of Gaylord's; $8,000 bail,' and I was taken back to the Troop."

Upon leaving the Magistrate's office, the defendant was returned to the cell at Troop Headquarters shortly after 5:00 A.M. From that time on the morning of August 22 until the morning of August 23, the defendant remained in the cell without communication except with police personnel;[3] he was not questioned further during this period. On the morning of August 23 at about 10:00 o'clock, still in the cell, the defendant asked Det. Fugate for something to read and then volunteered that he was ready to make a statement. Fugate conducted the defendant to Lt. O'Connor and Sgt. Buckmaster and they took the defendant's oral statement, completing it at about noon. The statement was partially inculpatory and partially exculpatory.

Thereafter, during the afternoon of August 23, the defendant was returned to appear again before Magistrate Fitzharris. The record

---

[2]The Superior Court held in a subsequent habeas corpus proceeding that this appearance before the Magistrate was a nullity; and on September 5, 1961, the Superior Court, sitting as a committing Magistrate gave the defendant a proper preliminary hearing.

[3]The defendant testified that he requested permission to call his mother and his attorney but that his requests were denied. The officers deny that such requests were made. It is undisputed, however, that there was no communication by the defendant with anyone outside Troop Headquarters during this period.

discloses no further hearing on the subject charge at that time.[4] By a "commitment" document dated August 23, 1961, executed by the Magistrate, the defendant was "Held in default of $8,000. Bail Bond for Superior Court" on the subject charge. At about 3:30 P.M. on August 23, the defendant was taken to the New Castle County Correctional Institution by the officers pursuant to the commitment.

As to the reasons for not taking the defendant before the Magistrate directly upon arrest, as commanded by the warrant, Det. Fugate testified:

"Q Now you had a warrant for his arrest that commanded you to bring him forthwith before Magistrate Fitzharris. Why didn't you obey the warrant?

"A Because there was a lot of investigation to be completed.

"Q You elected to ignore the mandate of your warrant and take him for questioning instead of complying with the law with respect to the warrant; is that right?

"A There are certain phases, sir, of the investigation, sir, that had to be completed."

And in connection, Sgt. Buckmaster testified:

"Q That warrant directed you to bring him forthwith before Magistrate Fitzharris or some other magistrate, did it not?

"A That is correct.

"Q Did you comply with that warrant?

----

[4]The record contains reference to a fugitive warrant issued by Pennsylvania authorities against the defendant but it does not appear that it had any significant effect upon the course of events here under review.

"A Yes, sir.

"Q When?

"A On 4:50 a.m. on the 22nd, approximately five hours after he had been arrested.

"Q And where did you take him in the meantime?

"A Troop One, Delaware State Police.

"Q Now what was the purpose of taking him there?

"Q To process him and to talk to him.

"Q And how long did the processing require?

"A A matter of minutes.

"Q A matter of minutes?

"A Longer than that, perhaps 20 minutes, by the time you take fingerprints and photograph him.

"Q So aside from the first 20 minutes you could have used for that, the rest of the time was used for what purpose?

"A Interrogation."

As to the reasons for returning the defendant and his codefendant Minor to the cell at Troop Headquarters, after the appearance before the Magistrate, instead of turning him over to the correctional authorities, Sgt. Buckmaster testified:

"Q Now after the alleged arraignment before Magistrate Fitzharris what was the magistrate's order * * *?

"A He was turned over to us for transportation back to the Troop.

"Q He was specifically turned over to you by the magistrate?

"A Yes, sir.

"Q He was not committed to the custody of the New Castle County Workhouse?·

"A He was turned over to us, sir.

"Q Isn't it customary that a prisoner, after he is arraigned, be turned over to the New Castle County Correctional Institution?

"A No, sir."

\* \* \*

"Q What was done with him from the time he was taken before the magistrate until he was taken down to the New Castle County Correctional Institution?

"A He was at Troop One, sir.

"Q Doing nothing?

"A What do you mean, sir? He was being talked to by other authorities.

"Q He was being interrogated?

"A Yes, sir."

As to his reasons for giving the oral incriminating statement on August 23, the defendant testified:

"Q Hans, why did you call and ask to be permitted to make a statement?

"A Well, it seemed to be the only way to get out of the cell and to get out to the Workhouse where I could somehow manage to contact my family and you, my lawyer, and do something about the situation in which I found myself.

"Q Would you have made a statement if you had been taken to the Workhouse after you had been at Magistrate Fitzharris?

"A No.

"Q Would you tell us once more why you made a statement?

"A I was held incommunicado and I wanted to get a lawyer, contact my family, see whether I could raise bail, and this was physically impossible with me being in a cell at the basement of Penny Hill Barracks."

From the outset of the trial, the defendant took the position that the oral statement of August 23 was inadmissible because taken during, and as the result of, an unlawful detention. This position was duly preserved by timely objection to the admissibility of the statement after *voir dire* examination of the officers and the defendant, by motion to strike, and by motion for directed verdict. The Superior Court ruled that the sole test was voluntariness and submitted that issue to the jury under a specific charge.

On motion for new trial, the Superior Court stated in this connection that *Wilson v. State,* 10 Terry 37, 49 Del. 37, 109 A. 2d 381 (1954) was controlling; that thereunder the test was voluntariness in which "many factors play a part", including length of detention; that, considering the age and apparent intelligence of the defendant, it could not conclude that the conditions under which the defendant was held, and the circumstances under which he offered to make the oral

statement, were coercive as a matter of law; and that the issue of voluntariness was properly submitted to the jury under the Wilson case.[5] Sentence was imposed and the defendant appeals.

Upon the appeal the defendant contends, *inter alia,* that the admission of his oral statement was prejudicial error and denial of due process of law.

## II.

A Statute and a Rule of Court are involved in the question before us.

The Statute is 11 *Del. C.* Sec. 1911:

"If not otherwise released, every person arrested shall be brought before a magistrate without unreasonable delay, and in any event he shall, if possible, be so brought within 24 hours of arrest, Sundays and holidays excluded, unless a Resident Judge of the county where he is detained or of the county where the crime was committed for good cause shown orders that he be held for a further period of not exceeding 48 hours."

The Rule is Superior Court Criminal Rule 5[6] which provides that an arrested person shall be taken before a committing Magistrate "without unreasonable delay" and specifies the rights of the accused

---

[5]The trial court and counsel have assumed that the rules regarding the admission of confessions are applicable to the semi-exculpatory statement here involved; and we shall, without deciding, make the same assumption.

[6]The Criminal Rules of the Superior Court were promulgated by this court, effective February 12, 1953, and were patterned closely upon the Federal Rules of Criminal Procedure. See "The New Rules of Procedure in Delaware" 18 F. R. D. 327 (1953). These Rules have the force and effect of legislative enactment. See 48 Del. Laws, Chap. 209; 11 *Del. C.* Secs. 5121, 5122; compage *Cohee v. Ritchey,* 1 Storey 597, 51 Del. 597, 150 A. 2d 830 (1959); *Associated Transport v. Pusey,* 10 Terry 413, 49 Del. 413, 118 A. 2d 362 (1955).

and the nature of the proceedings to be held by the Magistrate.[7]

## III.

 Most succinctly stated, the problem before us on this appeal is whether to apply the prevailing federal rule, known as the McNabb-Mallory rule.[8] Under the federal rule, any confession or

----

[7]Rule 5 provides as follows: "RULE 5. PROCEEDINGS BEFORE THE COMMITTING MAGISTRATE

"(a) Appearance. An officer making an arrest with or without a warrant or any other authorized peace officer shall take the arrested person without unreasonable delay before either the nearest available Justice of the Peace of the county in which the offense is alleged to have been committed or before the court out of which the warrant issued, in accordance with the command of the warrant. When an arrest is made without a warrant, a complaint shall be made as soon as the accused is brought before a committing magistrate.

"(b) Statement by the Committing Magistrate. The committing magistrate shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary hearing. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The committing magistrate shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules.

"(c) Preliminary Hearing. The defendant shall not be called upon to plead. If the defendant waives preliminary hearing, the committing magistrate shall forthwith hold him to answer in the Superior Court. If the defendant does not waive hearing, the committing magistrate shall hear the evidence within a

reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the committing magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the committing magistrate shall forthwith hold him to answer in the Superior Court; otherwise the committing magistrate shall discharge him. The committing magistrate shall admit the defendant to bail as provided in these rules. After concluding the proceedings the committing magistrate shall transmit forthwith to the prothonotary for the proper county all papers in the proceeding and any bail taken by him.

[8]Derived from *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1942) and *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957). The latter case involved Federal Criminal Rule 5(a) which requires that the arrested person be taken before a committing Magistrate without "unnecessary" delay instead of the "unreasonable" delay referred to in our Rule.

incriminatory statement obtained during an unlawful detention is inadmissible in evidence for that reason alone, without regard for voluntariness. Compare *United States v. Mitchell*, 322 U.S. 65, 65 S. Ct. 896, 88 L. Ed. 1140 (1944).

This court has not been required heretofore to grapple with this precise question, although it has been approached:

In *Wilson v. State*, supra, this court considered a contention, made for the first time on motion for new trial, that the defendant was not promptly arraigned, that his detention was unlawful, and that, therefore, the statement made during such detention could not be used against him. In Wilson, the defendant had been in police detention for approximately 13 hours before the statement was obtained; it does not appear in Wilson that the then-new Rule 5 was considered; and the Mallory case had not yet been decided. For these reasons we consider the Wilson case, on which the trial court and the State relied, to be inapposite.

The problem was again approached by this court in *Thompson v. State*, Del. 174 A. 2d 141 (1961). There the defendant was a prisoner serving a sentence on another charge at the time he was taken from the Correctional Institution to police headquarters for questioning. Thompson confessed within two hours after the police custody and questioning began; and he was then returned to the Correctional Institution until the next day when he was arraigned on the new charge. It was contended that the delay in arraignment violated Rule 5. This court there considered the Mallory case and held that it was inapposite because Thompson had been in custody and, therefore, was not restrained of his liberty during the period of questioning.

And most recently, in *Lasby v. State*, Del., 185 A. 2d 271 (1962), approximately 8 hours elapsed between arrest and arraignment during which a confession was obtained by the police. This court reaffirmed its holding in the Wilson case that police questioning before arraignment is not in itself unlawful; and further held that, in view of the 24 hour provision of Sec. 1911, the delay of 8 hours could not as a

matter of law be held to be an "unreasonable delay" under Rule 5.

Thus, in each of the cases which have come before this court to date, the period of alleged unlawful detention was much less than the 24 hour maximum limitation specified in Sec. 1911 as the public policy of this State.

In the case at hand, the circumstances under which the defendant's statement was secured reveal a plain disregard of the duty enjoined by law upon State law enforcement officers and committing Magistrates. Several basic facts are inescapable: (1) the defendant was held in police custody for almost 36 hours without benefit of the appearance and hearing required by Rule 5; (2) the proceeding before the Magistrate in the early morning hours of August 22 was a nullity; (3) the defendant was neither committed to the correctional authorities, nor admitted to bail, nor discharged after the initial appearance before the Magistrate; and (4) the police held the defendant both before and after the initial appearance for the purpose of interrogation; and the delay was for the purpose of obtaining a confession and not for general investigatory purposes.

██ We hold that, under the facts and circumstances of this case, there was an "unreasonable delay" as a matter of law under Sec. 1911 and Rule 5(a); and that the detention of the defendant, in excess of the 24 hour period specified by Sec. 1911, was unlawful by reason of the violation of both Sec. 1911 and Rule 5(a).

██ We further hold that the incriminating statement obtained from the defendant during such unlawful detention, i.e., after the expiration of the 24 hour period, was rendered inadmissible as a matter of law for that reason alone, without regard for voluntariness.

While our conclusions are not based upon comparable constitutional grounds, we adopt the rationale of this court in *Richards v. State*, 6 Terry 573, 77 A. 2d 199 (1950) wherein this court adopted the federal rule barring evidence obtained as the result of an unlawful arrest. It was there stated:

"We prefer the rule followed in the Federal courts. We conceive it the duty of the courts to protect constitutional guarantees. The most effective way to protect the guarantees against unreasonable search and seizure and compulsory self-incrimination is to exclude from evidence any matter obtained by a violation of them.

"We believe that as long as the Constitution of this state contains the guarantees to the citizen referred to, we have no choice but to use every means at our disposal to preserve those guarantees. Since it is obvious that the exclusion of such matters from evidence is the most practical protection, we adopt that means. It is no answer to say that the rule hampers the task of the prosecuting officer. If forced to chose between convenience to the prosecutor and a deprivation of constitutional guarantees to the citizen, we in fact have no choice. ** * *."

We correlate "the fruit of wrongdoing" in an unlawful detention and in an unlawful arrest—and we exclude both. Paraphrasing the language in Rickards: We conceive it the duty of our courts, in the administration of criminal justice, to enforce all applicable Statutes and Rules of Court. We find here a flagrant disregard of both Sec. 1911 and Rule 5. The exclusion in criminal trials of evidence obtained as a result of such violation of the law is the most practical and effective means at the disposal of our courts for the avoidance of similar violations in the future. We adopt such means to enforce the law, seeking to deter unlawful detentions just as we have sought to deter unlawful arrests. The law may not be enforced by disobedience of the law.

We thus adopt the federal McNabb-Mallory rule within the framework of the facts of the case before us. Our ruling is expressly limited, however, to a detention in excess of the 24 hour period specified in Sec. 1911, without the proceedings prescribed by Rule 5. Consideration of the standards of reasonableness of a detention of less than 24 hours must wait another case.

This being our view of the matter, it becomes unnecessary to pass upon the other grounds of the appeal, including the question of

the ultimate effect of the defendant's initial refusal to answer any questions until he had the advice of counsel.

We conclude that the defendant's statement was improperly admitted in evidence against him. The judgment of the Superior Court must be reversed and the case remanded.