**William HAUG, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted May 14, 1979.

Decided Aug. 24, 1979.

---

Neal A. Phillips, Wilmington, for defendant below, appellant.

Gary C. Linarducci, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, McNEILLY and QUILLEN, Justices.

HERRMANN, Chief Justice:

The defendant, William Haug, appeals on the grounds that his second degree murder conviction must be reversed because the Trial Court erred in admitting an inculpatory statement, denying a motion for a continuance, and refusing a motion for a judgment of acquittal based on Haug's contention that he lacked the required state of mind to commit the murder.

## I.

Shortly before 1:00 a. m. on January 19, 1974,[1] State Police officers arrived at Haug's home. In the presence of his father, they told the defendant that he was a suspect in their investigation of the murder of Vicky Kepley. They advised him of his *Miranda* rights[2] and took him to State Police Troop Headquarters for processing and investigation. Although the police told the defendant's father that he could accompany them to headquarters, he declined to do so. Because Haug was seventeen years old, the police called a Family Court Judge to obtain authorization to question the defendant at police headquarters. See 10 *Del.C.* § 933 and Family Court Rule 50.[3] The police repeated the *Miranda* warnings, and then attempted to question the defendant at approximately 1:30 a. m. An attorney, whom the defendant had retained to represent him on a separate charge for attempted murder, telephoned the headquarters between 2:20 and 3:00 a. m. and re-

1. This is an appeal from a second trial. A prior conviction of murder in the first degree was reversed by this Court and remanded for new trial. See *Haug v. State*, Del.Supr., 372 A.2d 538 (1977).

2. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. 10 *Del.C.* § 933, in effect at the time of this offense, provided:
   "§ 933. Duties of officer having child in custody; prohibited acts.
   "(a) Any peace officer having taken a child into custody shall immediately notify the custodian of the child that the child has been taken into custody.
   "(b) After making every reasonable effort to give notice under subsection (a), the peace officer:
      "(1) May release the child to his custodian with a brief report of the reason for his apprehension; or
      "(2) Shall take the child directly before the Court if the Court is in session unless a Judge of the Court shall direct otherwise; or
      "(3) Shall take the child before a court or commissioner for disposition in accordance with § 934, if this Court is not in session.
   "(c) After taking a child into custody, the officer shall forthwith file with the Court in the county where the child is taken into custody a petition in accordance with § 932 on forms furnished by the Court.

"(d) After the child has been taken into custody, the child shall not be held incommunicado for more than 2 hours or incarcerated in a jail, police station cell, prison, workhouse, or correctional institution except by order of a Judge of this Court and except as otherwise provided in this chapter."
Compare § 933 as amended in 1978.
Family Court Rule 50 provides in pertinent part:
"Rule 50. Arrest of a Child.
"(a) Duties of Peace Officers. Any peace officer who arrests a child shall immediately attempt to notify his parents or custodian of this fact. Within 2 hours after arresting a child, the peace officer shall (1) release the child on his own recognizance or that of his parents or custodian with a brief report of the reason for his apprehension, or (2) take the child before this Court, unless it otherwise directs, or (3) take the child before a court or Commissioner for the purpose of filing a complaint against him. In the event a child is not taken before this Court or another court or Commissioner by a peace officer, the peace officer shall forthwith file with this Court the original and one copy of the complaint.
"(b) No Incarceration. A child shall not be incarcerated in a jail, police station cell, prison, workhouse or correctional institution by a peace officer, except upon order of a Judge of this Court.  * * * *"

quested that Haug be taken promptly before a committing magistrate. However, the attorney did not ask to see Haug, or request that the interrogation cease until Haug had an opportunity to consult with him. The police told Haug that he could have his parents present if he desired, but the defendant said that he only wished to call his girl friend. This call was placed at approximately 3:00 a. m. After that call, Haug told the police that he wanted a few minutes to think things out before deciding whether to make a statement. Shortly thereafter, the defendant agreed to make a statement; this began at 3:24 a. m. and was concluded at 4:15 a. m. Although the defendant attempted to place the blame for Vicky Kepley's murder on his accomplice, the statement implicated Haug in the crime. After the defendant signed his statement, the police took him to the murder scene to recover evidence, and then brought him before a magistrate at approximately 6:00 a. m.

## II.

The Trial Court denied the defendant's motion to suppress the statement. Haug submits that this ruling constitutes reversible error, contending that the statement was inadmissible because (1) it was the product of an illegal detention; and (2) it was an involuntary statement made by a minor without the advice of either an attorney or a parent.

## A.

Haug argues that the detention was illegal because the police failed to comply with 10 *Del.C.* § 933 and Family Court Rule 50;[4] that, therefore, the statement may not be admitted under this Court's holding in *Vorhauer v. State,* Del.Supr., 212 A.2d 886 (1965) that a statement obtained from a defendant during unlawful detention is "rendered inadmissible as a matter of law for that reason alone, without regard for voluntariness." 212 A.2d at 892.

■ The defendant presented his § 933 argument during the pre-trial suppression hearing. We agree with the Trial Judge's finding that there was no violation of that Statute. The police complied with § 933(a) by immediately notifying the defendant's father of his son's arrest when they apprehended Haug. Subsection (b) of § 933 presented the police with a trilogy of alternatives. Because Haug was not released, the first alternative was inapplicable. Because the Family Court was not in session between 1:00 a. m. and 6:00 a. m., the second alternative was inapplicable. Therefore, the police were obliged to comply with the third alternative by taking Haug "before a court or commissioner for disposition in accordance with § 934 . . . ." The Trial Judge noted that the Statute did not specify a time limit for bringing a child before a court or a commissioner, and assumed that the standard "is a reasonable time under the circumstances." The Trial Judge found that bringing the defendant before a magistrate shortly after 6:00 a. m. was reasonable under the circumstances. "[I]n determining the reasonableness of such delay, the significant hours of detention are those occurring before the confession and not those thereafter." *Weekly v. State,* Del.Supr., 222 A.2d 781, 787 (1966). Since Haug was arrested at approximately 1:00 a. m. and began his statement at 3:24 a. m., the detention prior to the statement was less than two and one-half hours. We agree with the Trial Judge that the defendant was brought before a court or commissioner within a reasonable time and, therefore, there was no violation of § 933(b).

■ The defendant maintains that § 933(d) was violated because he was held incommunicado for more than two hours after being taken into custody. We find no merit in this argument. The defendant was allowed to place a phone call to his girl friend, the person of his choice, within approximately two hours after being taken into custody.

■ The defendant also argues that his detention was illegal because the police vio-

4. See text of Family Court Rule 50 and 10 *Del.C.* § 933 supra.

lated Family Court Rule 50. We disagree with the State's contention that Rule 50 is inapplicable because the Family Court lacked jurisdiction. Although 10 *Del.C.* § 921(2)(a)[5] specifically excludes murder in the first degree from the exclusive original jurisdiction of the Family Court, it does not exclude the jurisdiction of the Family Court at the initial stage of such case. Indeed, 10 *Del.C.* § 938(a)(1) and (b)[6] expressly provide the Family Court with jurisdiction at the preliminary stage of a first degree murder case in which the defendant is a minor.

■ Although Rule 50 parallels 10 *Del.C.* § 933, it is more stringent. However, as we have found, the State complied with the provisions of § 933. The Statute has preempted the field; and, therefore, insofar as Rule 50 is inconsistent with or more stringent than § 933, the Statute prevails. Accordingly, we reject the defendant's contention that his detention was reversible error because it was illegal under Rule 50.

Because the defendant's detention was not illegal, the rule of *Vorhauer,* that statements which are the products of an illegal detention are inadmissible, has no application. There was no reversible error on the ground of illegal detention.

#### B.

■ The defendant also contends that his statement should have been suppressed because it was involuntary and therefore admitted in violation of his Fifth Amendment privilege against self-incrimination. Under *Miranda,* the defendant's statement was admissible since he received proper *Miranda* warnings and did not request an attorney. Furthermore, there is no evidence of police coercion during the questioning.

However, the defendant would have us extend *Miranda* by adopting a rule that "a juvenile's statement is involuntary unless he is given the opportunity to consult with an informed and interested adult who has been informed of the juvenile's constitutional rights. . . ." The contention is inapplicable here. Haug declined the opportunity to meet with his parents or an attorney. The defendant seems to be arguing that any statement of a minor is involuntary unless the minor actually consults an attorney or an informed adult.

In the light of the recent opinion of the U.S. Supreme Court in *Fare v. Michael C.,* —— U.S. ——, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), we reject the defendant's contention and conclude that there was no error on this ground in the admission of the statement. In *Fare,* the Court refused to extend the *per se* rule of *Miranda,* excluding statements obtained after the police ignored a defendant's request for an attorney, to the exclusion of statements obtained after police ignored a juvenile's request to confer with his probation officer. The Court there stated:

"[T]he California Supreme Court erred in finding that a juvenile's request for his probation officer was a *per se* invocation of that juvenile's Fifth Amendment rights under *Miranda.* We conclude,

---

**5.** 10 *Del.C.* § 921(2)(a) provides:

"§ 921. Exclusive original civil jurisdiction. The Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning:

\* \* \* \* \* \*

"(2) a. Any child charged in this State with delinquency by having committed any act or violation of any law of this State or any subdivision thereof, except: Murder in the first degree, rape, kidnapping, any child 16 years of age or older charged with violating Chapter 41 of Title 21, Delaware Code, except as hereinafter provided, or any other crime over which the General Assembly has granted or may grant jurisdiction to another court; \* \* \*."

**6.** This Statute provides in pertinent part:

"§ 938. Proceeding against child as an adult; amenability proceeding; referral to another court.

"(a) A child shall be proceeded against as an adult where:

"(1) The acts alleged to have been committed constitute first degree murder, rape or kidnapping;

\* \* \* \* \* \*

"(b) In all cases specified in (a) the Court shall, upon application, hold a preliminary hearing and, if the facts warrant, thereafter refer the child to the Superior Court or to any other court having jurisdiction over the offense for trial as an adult. \* \* \*."

rather, that whether the statements obtained during subsequent interrogation of a juvenile who has asked to see his probation officer, but who has not asked to consult an attorney or expressly asserted his right to remain silent, are admissible on the basis of waiver remains a question to be resolved on the totality of the circumstances surrounding the interrogation." —— U.S. at ——, 99 S.Ct. at 2573, 61 L.Ed.2d at 214.

The Court reasoned that "[t]he *per se* aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversarial system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts." —— U.S. at ——, 99 S.Ct. at 2569, 61 L.Ed.2d at 209. Since "an informed and interested adult" also lacks the "unique role" of a lawyer, there seems to be no sound basis for the *per se* extension of *Miranda* as argued by this defendant.

■ We agree that a defendant's youth and experience are relevant factors for consideration under the *Fare* totality of circumstances test, and that the confessions and admissions of a juvenile require special scrutiny. *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 303–04, 92 L.Ed. 224 (1948); *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 1212–13, 8 L.Ed.2d 325 (1962). However, Haug was seventeen years old, had a ninth grade education, and had previous experience with the criminal justice system. Furthermore, the record does not reveal the use of any coercive tactics by the police. The police carefully warned defendant of his *Miranda* rights, and although not required to do so, told the defendant that he could call his parents. The defendant declined these offers, and only asked to call his girl friend. This call was placed, and the defendant then made his statement. We find that the defendant was properly informed of his rights, and that under the *Fare* "totality of circumstances" test, he waived his right against self-incrimination. Accordingly, we find no Fifth Amendment error in the admission of the defendant's statement.

### III.

■ On the day that his trial was to begin, the defendant's counsel requested a continuance, claiming that the effects of Haug's medication made the defendant unable to effectively assist counsel and participate in his trial. The Trial Judge delayed the commencement of the trial until the next day to permit the effects of the medication to wear off, and to give the defendant's attorney an opportunity to obtain an affidavit from a doctor to support his contention. The defendant's counsel did not offer an affidavit from a physician the next morning, and informed the Trial Judge that when he spoke with Haug, the defendant appeared to understand the discussion and responded normally. Accordingly, we find no abuse of discretion in the Trial Judge's denial of the defendant's request for a continuance. See, Annot., "Continuation of Criminal Case Because of Illness of Accused," 66 A.L.R.2d 232 (1959).

### IV.

■ Finally, the defendant argues that, because he offered expert testimony to the effect that he lacked the state of mind necessary to murder the victim, the Trial Court should have granted his motion for acquittal. However, the State offered opposing expert testimony to the effect that the defendant was not under extreme emotional distress during the shooting, and was able to distinguish right from wrong. Given conflicting expert testimony, the jury was permitted to accept the State's version. Accordingly, there was no error, on this ground, in the denial of the defendant's motion for a judgment of acquittal. See *Dashiell v. State,* Del.Supr., 154 A.2d 688, 689–90 (1959).

\* \* \*

Affirmed.