STATE of Delaware,

v.

Alison RAFAL *.

Nos. 0611019278, 0611020162.

Family Court of Delaware.

Submitted: April 12, 2007
and May 9, 2007.

Decided: May 9, 2007.

* Pseudonyms are used to protect the privacy of     the parties

Carole Davis, Georgetown, DE, for the State of Delaware.

Tasha M. Stevens of Fuqua and Yuri P.A., Georgetown, DE, for Defendant.

OPINION

HENRIKSEN, J.

The defendant is a 15–year–old female charged with Attempted Murder 1st, Robbery 1st, Possession of a Firearm During the Commission of a Felony, and Conspiracy 1st. On April 12, 2007, the Court conducted a Suppression Hearing wherein the defendant argued that her statement given to the police was inadmissible because she had not waived her *Miranda* Rights. After denying the Motion to Suppress, the case proceeded to trial. At the conclusion of the trial, the Court announced on the record its findings, and basis thereof, that the defendant was guilty of Robbery 1st, Possession of a Firearm During the Commission of a Felony, and Conspiracy 2nd. The Court reserved its decision on the charge of Attempted Murder 1st, and requested memoranda from the attorneys regarding that charge and also whether the facts might lead to a finding of guilt of a lesser included offense of Attempted Murder 2nd.

Based upon the testimony provided, including the defendant's statement which was allowed into evidence, the Court found that on the evening of November 24, 2006, the 15–year–old female defendant contacted the 32–year–old male victim around 6:00 p.m. stating that she was hungry, wanted something to eat, and requesting that he come and get her. The defendant instructed the victim to meet her at the Coverdale Crossroads playground. While the defendant and the victim were sitting in victim's car at the Coverdale Crossroads playground, the defendant reached over and took the keys to turn off the car. At about that time, two men wearing masks appeared on either side of the car. One of the masked gentlemen demanded the victim's money while holding a gun to the victim's head. The armed robber then fired a few shots from close range at the

victim. Although the shots penetrated the victim's clothing, amazingly, the victim was not harmed. The two masked gentlemen, as well as the 15–year–old defendant, then fled the scene.

Based upon the testimony of the various witnesses as well as the defendant's statement, the Court concluded that this 15–year–old female defendant had agreed with the shooter prior to the incident to arrange for the victim to be present at the robbery location. Furthermore, the Court concluded that the defendant knew that the shooter planned to rob the victim, that the shooter would be armed, and that the shooter might pistol whip the victim with the handgun. There was no proof in the record that the defendant had any knowledge of the shooter's intent to fire shots from close range at the victim. Furthermore, at no time during the actual robbery did the defendant threaten the victim, rob him or shoot at him. However, the Court was convinced that the State had proved beyond a reasonable doubt that the defendant, under title 11, section 271(2)(b) of the *Delaware Code*, intended to promote and facilitate the commission of the crimes of Robbery 1st, Possession of a Firearm During the Commission of a Felony, and Conspiracy 2nd, by aiding and agreeing to assist the shooter in the planning or commission of the crimes, and committed an overt act in the furtherance of those crimes by making the victim available at the place of the co-defendant's choosing and shutting down the vehicle so that the victim could not flee.

## MOTION TO SUPPRESS

■ The defendant moved to suppress her statement given to the police on November 28, 2006. The defendant alleged that the police obtained her statement in violation of her 5th Amendment rights in having failed to obtain a verbal or written waiver of her 5th Amendment *Miranda* warnings.

The defendant was brought to the Delaware State Police Station around noon on November 28, 2006, by her guardian grandmother and her aunt. Prior to the interview, the detective informed the aunt and grandmother that only one of them would be permitted along with the defendant in the Interview Room. It was agreed between grandmother and aunt that the aunt would accompany the defendant into the Interview Room.

The Court listened to the tape of the interview after it was placed into the record. In order to assist the Court, a transcript of the tape was also prepared and submitted into the record.

At the outset of the interview, the detective stated the following:

"Okay, [defendant], you know you have the right to remain silent and anything you say can and will be used against you in a Court of Law. You have the right to have an attorney present while you are being questioned. If you can't afford to hire an attorney, one will be appointed to represent you if you wish one. If you decide to answer any questions with or without an attorney present, you may stop at any time during the questioning. Okay, do you guys, the both of you, do you understand your rights? Okay, and having these rights in mind, okay, do you wish to talk?"

In response to the detective's opening questions, there is an audible "yes" on the tape. However, the detective could not state with certainty whether the audible response was from the defendant or from her aunt.

After receiving the audible response from either the defendant or the aunt, the detective then went on to state, "Just remember you can stop, you don't feel com-

fortable in answering the question, you don't have to."

Thus, there is the issue of whether the detective's uncertainty in receiving an audible response from the defendant resulted in an appropriate waiver of the defendant's *Miranda* Rights. The Court also noted that the detective read the preceding *Miranda* Warnings in a very quickly spoken manner, and certainly more quickly than the other questions were asked in the interview. Given that the consequence of failing to properly advise a defendant on *Miranda* could mean the suppression of a defendant's incriminating statement, and that inclusion or exclusion of the statement can often mean the difference between a finding of guilt or innocence, the Court would think that police officers who conduct such interviews would be well advised to take appropriate time and give appropriate emphasis in reciting the *Miranda* Warnings.

The Constitutional Provisions of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) extend to both adults and juveniles.[1] Confessions and admissions of a juvenile require our special scrutiny.[2] However, the standard for determining whether there is a knowing and voluntary waiver is the same for adults and juveniles. There is no separate test for children in Delaware.[3] The State must prove by a preponderance of the evidence that a confession has been voluntarily made.[4] The waiver has two components.

First, the confession must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Only if, under the totality of the circumstances, the interrogation reveals "both an uncoerced choice and the requisite level of comprehension" can *Miranda* be considered properly waived.[5]

As to the first of the above components, whether the defendant's will was overborne by coercive police conduct, the Court did not find the detective's interview to contain any impermissible intimidation, coercion or deception.[6]

Also, there is no requirement that a waiver be written or verbal in Delaware.[7] A waiver can be implied through words and actions of the defendant despite the fact that they fall short of an express waiver.[8] Both of the footnoted cases, *Siple* and *DeAngelo,* cite with favor the case of *State v. Aversa,* where the Connecticut Court stated, "Although there was no express waiver, the defendant's willingness to speak and his course of conduct after being given his *Miranda* Warnings constituted explicitly affirmative acts evidencing waiver."[9]

The Court must review the "totality of the circumstances" surrounding the interrogation by applying an objective,

1. *In re Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

2. *Haug v. State,* 406 A.2d 38, 43 (Del.1979).

3. *Marine v. State,* 607 A.2d 1185, 1197 (Del. 1992).

4. *DeJesus v. State,* 655 A.2d 1180 (Del.1995).

5. *Id.* at 1192.

6. *State v. Rooks,* 401 A.2d 943, 948 (Del. 1979).

7. *State v. Siple,* 1996 WL 528405 (Del.Super.)

8. *Id.* Also, *State v. DeAngelo,* 2000 WL 305332 (Del.Super.).

9. *State v. Aversa,* 197 Conn. 685, 501 A.2d 370, 376 (1985).

reasonable person standard to whether the statement was given by the defendant as a result of an intelligent, knowing and voluntary waiver of her constitutional rights.[10] One of the circumstances to consider in this case is that the defendant is a juvenile. Thus, in this case, the totality of the circumstances mandates inquiry into the age of the child, the child's experience, education, background, intelligence, as well as inquiry into whether she has the capacity to understand the warnings offered to her, the nature of her 5th Amendment Rights, and the consequences of waiving those rights.[11] The *Fare* decision noted that it was not imposing restraints on the Court and law enforcements officers in dealing with experienced older juveniles who, knowing and intelligently waive their 5th Amendment Rights and voluntarily consent to interrogation.

In this particular case, this 15–year–old juvenile defendant was accompanied during the interview by an adult who she knew, and who was selected by her guardian to accompany her into the interview. The police officer read the *Miranda* Warnings, and he received a verbal acknowledgment of understanding from either the defendant or her aunt. The police officer added an additional caution to remind them that they could stop if they did not feel comfortable answering the question. The defendant participated in the interview by answering questions. There was no suggestion that the defendant had a hearing problem. Even if the Court was concerned that the police officer's initial reading of the *Miranda* Warnings was made very quickly, the detective's words were understandable. Furthermore, the testimony from Michellin E. Stokes, the child's probation officer under a reciprocal agreement from the State of Maryland,

demonstrated that this juvenile had extensive past experience with arrests in the criminal system during 2005 as well as early 2006. The probation officer testified that the defendant was "anything but limited" and not intimidated by adult figures. The defendant's Principal at the Middle School she attends testified that the defendant is not intimidated by adults, is a regular education student, and is very worldly and very street smart.

Given all of the above, the Court found that the officer's interrogation was appropriate and free from any overreaching and the defendant cooperated in the interview. The Court further found that, even though the defendant is only 15 years of age, she is street smart and intelligent, and that she has had considerable experience with the legal system so that she would have had previous experiences in *Miranda* Warnings. Based upon all of this, the Court found the defendant's waiver to be voluntarily, knowingly, and intelligently given, and, therefore, denied the defendant's motion to suppress her statement.

### ATTEMPTED MURDER 1st

There was no proof before the Court that the juvenile defendant had specifically intended to kill the victim. However, it was clear to the Court that the juvenile defendant, in conspiracy with her co-defendant, arranged for the robbery of the victim. It was also clear to the Court that the juvenile defendant knew that her co-defendant would be carrying a gun with the possibility that the co-defendant would pistol whip the victim. In such a case, this Court is of the opinion that it was reasonable to foresee, where a gun is involved, that shots could be fired during the robbery. In this case, shots were not only

---

**10.** *DeJesus v. State*, 655 A.2d 1180, 1190 (Del. 1995).

**11.** *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

fired during the robbery, but they were fired at close range at the victim. It is almost unbelievable that the victim was not struck by a bullet and seriously harmed or killed.

The issue, therefore, in determining whether the juvenile defendant is guilty of Attempted Murder 1st, is whether the State needed to prove that the juvenile defendant had a specific intent to kill the victim, or whether it was sufficient for the State to prove that it was reasonably foreseeable in advance that another crime, namely, Attempted Murder, might be committed during the commission of the contemplated crime, the robbery.

In a recent decision out of the Delaware Superior Court, in facts somewhat similar to the case *sub judice*, Judge Silverman ruled that, "where accomplice liability is involved, under the *Chance*[12] decision, the trier of fact must first consider what crimes the defendant actually intended to commit with the accomplice." [13] In the present case, the Court has found beyond a reasonable doubt that the juvenile defendant had the specific intent to conspire with the co-defendant to rob the victim. Judge Silverman then went on to state that "[a]s to consequential crimes commit-

ted by the accomplice during the intended offenses, the case of *Claudio v. State*[14] applies." On such consequential crimes, in this case Attempted Murder, the State need only prove that a person in the defendant's position could reasonably foresee that attempted murder was a foreseeable consequence to the commission of the armed robbery.

### CONCLUSION AND ORDER

For all of the foregoing reasons, the Court finds the defendant guilty beyond a reasonable doubt, and, as such, adjudicates the defendant delinquent on each of the following charges:

(1) Attempted Murder 1st

(2) Robbery 1st

(3) Possession of a Firearm During the Commission of a Felony

(4) Conspiracy 2nd

IT IS SO ORDERED.

12. *Chance v. State*, 685 A.2d 351 (Del.1996).

13. *State v. Richardson*, not reported in A.2d, 2006 WL 3094164 (Del.Super.)

14. *Claudio v. State*, 585 A.2d 1278 (Del.1991).