**John W. HOPKINS,
Defendant-Appellant,**

v.

**STATE of Delaware, Plaintiff-Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 16, 1985.

Decided: Dec. 18, 1985.

Carol F. Braverman of Twilley, Jones & Feliceangeli, Dover, for defendant-appellant.

M. Jane Brady, Deputy Atty. Gen., Dover, for plaintiff-appellee.

Before CHRISTIE, C.J., McNEILLY and HORSEY, JJ.

HORSEY, Justice:

Defendant was convicted in trial by jury in Superior Court of multiple drug-related offenses. On appeal, defendant asserts various grounds for reversible error. We first address alleged error in the Trial Court's failure to suppress: (i) narcotic/drug evidence seized by the police in executing search warrants for the search of his mobile home and his safe deposit

box; and (ii) defendant's oral statement made after arrest and during a period of allegedly unlawful detention.

On October 28, 1983, the Delaware State Police obtained a search warrant for the search of defendant's home. The search warrant was executed at 10:00 a.m. that day by a special drug "Investigative Strike Force"; and, in the course of the search, the police discovered: a considerable amount of drugs and accompanying paraphernalia; a loaded handgun; many other weapons; over $1,000 in U.S. currency; coded information; and a key to a safe deposit box. After seizure of the contraband and other property, defendant was arrested at the premises and was transported at about 10:30 a.m. to the troop barracks for holding in custody for later processing.

The chief investigator and arresting officer remained at the premises until 5:00 p.m. to direct the execution of the search and inventorying of the property seized. The evidence seized was then transported to the troop. There a precisely detailed report itemizing the extensive number [in excess of 150] of articles of personal property that were seized was restated and returned to the issuing magistrate at about 5:30 p.m. The chief investigator then returned to the troop to "process" defendant, who had been held since his arrest that morning incommunicado in a troop holding cell.

Sometime between 6:30 and 7:00 p.m., the chief investigator gave defendant his *Miranda* warnings; defendant did not request an attorney; and defendant proceeded to respond to the chief investigator's questioning. In the course of questioning, defendant, a previously convicted felon, admitted that he was the owner of one of the guns found at the premises. On October 31, 1983, the police obtained a search warrant for a safe deposit box leased by defendant from an area bank, which was found to contain U.S. currency in excess of $4,000.

On appeal, defendant contends that the premises search warrant was issued without probable cause for various deficiencies in the affidavit, including: (i) that the reliability and credibility of the informants was not established; (ii) that the information contained therein was stale; and (iii) that the place to be searched was not adequately identified.

[1] The affidavit, when read as a whole, sets forth facts adequate to warrant a reasonable man in the belief that defendant's residence was being used on an ongoing basis by defendant to engage in unlawful drug trafficking. *See Jensen v. State*, Del. Supr., 482 A.2d 105, 110–111 (1984). In *Tatman v. State*, Del.Supr., 494 A.2d 1249 (1985), this Court adopted the "totality of the circumstances test" announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for determining the existence of probable cause to conduct a search. Where cause is based on an informant's tip, the former two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)—of a showing of both the basis for the informant's knowledge and facts establishing informant's veracity, or the reliability of his information—is no longer required. *Tatman v. State, supra* at 1251.

The totality of the circumstances test has proper application to this case. Affiant demonstrated his reliance upon multiple sources to substantiate his belief that defendant was engaging in drug trafficking: (i) four informants, none of whom were aware of the others' participation and three of whom implicated themselves in defendant's sales; (ii) numerous citizen complaints reporting "inordinate" vehicular traffic to and from defendant's home by people "staying only for a couple of minutes"; and (iii) affiant's own surveillance of the residence and his observation of the same kind of traffic reported by citizen complaint. We conclude that the affidavit established more than a "fair probability that contraband or evidence of a crime [would]

be found" at defendant's residence. *Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332.

Defendant's argument that the warrant was based on impermissibly stale information must also be rejected. Whether information has become stale "depends upon all the facts as viewed in a flexible and practical manner." *Jensen v. State, supra* at 112. The ongoing nature of the criminal activity involved—drug trafficking—reasonably led the police to enlarge the time frame for receiving reports of suspicious conduct of a repetitive nature to present a strong case for the grant of a search warrant. However, the affidavits included alleged criminal activity of defendant that occurred as recently as two days before application for the warrant. *Compare Mayer v. State,* Del.Supr., 320 A.2d 713 (1974). There is also no merit to defendant's contention that the place to be searched was not sufficiently identified in the affidavit. The application located the rural address of defendant's home with sufficient specificity and, in any event, was buttressed by a photograph of the mobile home which was identified as the residence of defendant.

■ We need not consider defendant's argument that the October 31 warrant for the search of the contents of defendant's safe deposit box was issued without probable cause. The State did not introduce at trial any evidence that was seized from defendant's box. However, we note that the Trial Court found probable cause to have been established for the search; and we affirm the Court's denial of defendant's pre-trial motion for the return of currency ($4,542.00) seized from defendant's box and for the return of $1,114.00 seized in his home. The issue of whether the currency was contraband or defendant's lawful property was a factual one. Defendant's own testimony was conflicting as to the source

of the funds; and there was substantial evidence to support the Court's implicit finding on the incomplete pre-trial record that defendant had not met his burden of establishing that the monies seized represented gains from lawful transactions and not from criminal activity.

■ Defendant further contends that his oral admission to the police of ownership of a gun made more than eight hours after arrest required suppression, whether or not voluntarily made, because obtained during a period of unlawful detention, contrary to 11 *Del.C.* § 1909.[1] *Vorhauer v. State,* Del. Supr., 212 A.2d 886 (1965). Defendant refers to the delay of almost nine hours between his arrest at his home and detention by the police and his admission, referred to in paragraph (4) above. While delays of less than 24 hours are not necessarily unreasonable, they may be found unreasonable if the circumstances warrant. *Fullman v. State,* Del.Supr., 389 A.2d 1292 (1978), *overruled on other grounds* in *Davis v. State,* Del.Supr., 400 A.2d 292, 295, n. 3 (1979). Whether a statement otherwise admissible is inadmissible as a product of unreasonable delay under § 1909 is to be determined after consideration of the totality of the circumstances. *Webster v. State,* Del.Supr., 213 A.2d 298 (1965).

The reasonableness of police delay in bringing an arrested person before a magistrate is an evidentiary question initially determined by the Trial Court and to be affirmed on appeal if the record supports the Court's finding that the delay was reasonable. *Anderson v. State,* Del.Supr., 452 A.2d 955, 957 (1982).

The apparent reason for the nine hour delay between defendant's arrest and his interrogation was that the arresting officer, who was also the chief investigator,

1. **§ 1909. Hearing without delay; permissible delay.**

   If not otherwise released, every person arrested shall be brought before a magistrate without unreasonable delay, and in any event he shall, if possible, be so brought within 24 hours of ar-

rest, Sundays and holidays excluded, unless a resident judge of the county where he is detained or of the county where the crime was committed for good cause shown orders that he be held for a further period of not exceeding 48 hours. *See* Super.Ct.Crim.R. 5(a).

was engaged in a time-consuming search, seizure and inventory that fully occupied him until about 5:30 the same afternoon. There is no evidence that defendant's initial interrogation was delayed for any other reason. Given the special training and expertise of the arresting officer in drug identification and distribution techniques, as well as the quantity of the materials seized, we cannot say that delaying defendant's processing until the arresting officer's return to the troop was unreasonable under the circumstances. On the contrary, it would seem that the arresting officer was the most appropriate person to interview defendant and that until the search and seizure was completed and return made, any interview would have been premature. *See Poli v. State*, Del.Supr., 418 A.2d 985, 987 (1980).

Because defendant was not taken to the committing magistrate until sometime after 9:00 p.m. and before midnight, he urges this added delay as a further basis for applying the exclusionary rule to his statement obtained about 7:00 p.m. In determining the reasonableness of any delay, "the significant hours of the detention are those occurring before the confession and not those thereafter." *Haug v. State*, Del. Supr., 406 A.2d 38, 41 (1979); *Weekley v. State*, Del.Supr., 222 A.2d 781, 787 (1966). While the record is not entirely clear, it is reasonable to assume that the further passage of time may have been related to the preparation of the nine different counts of the criminal offenses with which defendant was charged.

■ Defendant next contends that if his oral statement was not involuntary as a matter of law, it was involuntary on constitutional grounds in that it was the product of duress and coercion. The asserted duress was the officer's threat to charge defendant's female companion with a hand gun offense for one of the many guns found at the premises if defendant (a person prohibited) did not admit to being the owner of one of the guns seized.

The Trial Court having rejected the contention after evidentiary hearing, the question of voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The evidence of record supports the Trial Court's finding that defendant's statements "were made voluntarily without any undue duress or coercion either mental or physical." We so find. *See Anderson v. State, supra* at 957. *Bellamy v. State*, 50 Md.App. 65, 435 A.2d 821 (1982), upon which defendant predominantly relies, is procedurally and factually distinguishable.

The State concedes that defendant's conviction of possession of drug paraphernalia, a misdemeanor, 16 *Del.C.* § 4771, must be set aside and the indictment for such offense dismissed for failure of the indictment to state an essential element of the offense. The Trial Court erred in denying defendant's motion to dismiss the indictment and in granting the State's motion to amend the indictment made after the evidence was in.

Defendant's remaining grounds for reversible error are without merit. The Court did not abuse its discretion in limiting defense counsel's examination of witnesses; and the evidence of record, viewed in a light most favorable to the State, was sufficient for a rational trier of fact to conclude: that defendant was in possession of the contraband and weapons seized; that he possessed controlled substances with the intent to deliver; and that he was in possession of a deadly weapon during the commission of a felony. *See Ross v. State*, Del.Supr., 482 A.2d 727 (1984); *Redden v. State*, Del.Supr., 281 A.2d 490 (1971).

\*　　\*　　\*

AFFIRMED in part; REVERSED in part; and REMANDED.