**Kawan PALMER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 31, 1993.
Decided: June 15, 1993.
Rehearing Denied July 28, 1993.

John M. Willard, Wilmington, for appellant.

Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

The appellant, Kawan Palmer ("Palmer"), appeals his Superior Court jury convictions of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine and Conspiracy Second Degree. Palmer contends that the Superior Court erred in not suppressing his statement made to the police which resulted from a violation of the notification and presentment requirements of 10 *Del.C.* § 933 and Family Court Rule 5(b). In addition, Palmer argues that his statement to the police was obtained in violation of his *Miranda* rights. We find it unnecessary to address Palmer's *Miranda* claims because we find that police delay in notifying Palmer's custodian of his arrest as well as the delay in presenting Palmer to a Family Court Commissioner violated 10 *Del.C.* § 933 and Family Court Rule 5(b). Accordingly, we reverse and remand.

**I**

At trial, the State presented evidence of the following events. On September 12, 1990, a group of males, including Palmer who was then seventeen years old, arrived in Wilmington by train from New York City. For several persons in the group the purpose of the trip apparently was to sell cocaine. At approximately 6 p.m. that evening, there was a confrontation between the New York group and several local men. The confrontation ended abruptly when one of the New York group, Santise Robinson ("Robinson"), began firing a pistol, killing one person and wounding several others. The crowd dispersed and the police immediately began their investigation. Palmer, who had fled the scene of the shooting, was apprehended at 6:30 p.m. He was transported to the police station where he was read his *Miranda* warnings at approximately 6:45 p.m. Palmer truthfully gave his name, address and age. Palmer claimed during the suppression hearing that he also gave the police his grandmother's phone number but the police deny it. Palmer was not cooperative in answering any other questions. Palmer was then taken to an interview room where he spent the night handcuffed to a bench.

Palmer's co-defendants, Edward Collen, Leonard Trader,[1] and James Walker, were

1. Trader resides in Wilmington. The New York group apparently used Trader's residence to meet and to store the drugs.

arrested at 12:30 a.m. Jorge Colon ("Colon") and Duane Lammers ("Lammers"),[2] also co-defendants, were arrested a half-hour later. The police continued their investigation throughout the night. By 3:00 a.m. the police had determined that Robinson was the gunman. Colon gave a statement at 3:30 a.m. in which he implicated Palmer in the plan to sell drugs. Trader gave a statement at 4:30 a.m. in which he said that Palmer knew of the group's plan to sell drugs and that Palmer was the group's "enforcer." At 5:02 a.m., ten and one-half hours after his arrest, Palmer gave a statement in which he implicated himself in the plan to sell drugs. Palmer was presented to a Family Court Commissioner at 8:00 a.m.

Palmer was charged with Trafficking in Cocaine, Possession with Intent to Deliver Cocaine and Conspiracy Second Degree. Prior to trial, Palmer moved to suppress his statement on the grounds that the police failed to immediately present him to a Family Court Commissioner as required by 10 *Del.C.* § 933 ("§ 933") and Family Court Rule 5(b) ("Rule 5(b)"). In addition, Palmer moved to suppress his statement on the grounds that it was involuntary. The motions were denied. At trial, Lammers and Colon testified that Palmer did not know of the group's plan to sell drugs in Wilming-

ton. Nonetheless, Palmer was convicted on all counts based on accomplice liability.

## II

Under § 933[3] and Rule 5(b),[4] when a minor is arrested the police are required to notify the minor's custodian immediately and to present the minor to a Family Court Commissioner without unnecessary delay. Palmer contends that the police failed to comply with either of these requirements. Because Palmer did not raise the issue of custodian notification below, he is entitled to relief on that claim only if he can establish plain error on the part of the lower court. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986).

## III

■ Read together, Section 933 and Rule 5(b) require the police to attempt to notify a minor's custodian immediately after placing the minor under arrest. In this case, after Palmer was arrested he provided the police with his name, address and age. There is conflicting testimony as to whether Palmer also provided the police with his grandmother's telephone number. In any event, no attempt was made to notify Palmer's custodian of his arrest.

■ The State advances several arguments to justify the failure of the police to

---

2. Lammers is also known as Reggie Holmes.

3. 10 *Del.C.* § 933 provides in pertinent part:
   § 933. **Duties of officer having child in custody.**
   A peace officer may take into custody a child he believes to be dependent, neglected or delinquent. Any peace officer having taken such a child into custody shall immediately notify the child's custodian citing the reasons therefor. If the custodian refuses to accept the child or cannot be located or cannot provide adequate care for the child, the peace officer shall:
   \* \* \* \* \* \*
   (2) When the child has been charged with a delinquent act, take the child directly before the Court if the Court is in session or take the child before a court or commissioner for disposition in accordance with § 934 of this title. After taking the child into custody, the peace officer shall forthwith file with the Court a sworn complaint alleging delinquency with a report for the reason of his apprehension.

4. Family Court Criminal Rule 5(b) states:
   (b) **Taking a Child Into Custody.**
   (1) **Duties of a Peace Officer.** Any peace officer who takes a child into custody shall immediately attempt to notify the child's custodian of this fact. Without unreasonable delay after apprehending a child without a warrant a peace officer shall:
   (a) release the child to the child's custodian with a brief report of the reason for the apprehension; or
   (b) take the child before a court for the purpose of filing a complaint.
   Rule 5(b)(1)(a) and (b) notwithstanding, if the apprehension is on an outstanding warrant, without unreasonable delay the peace officer shall take the child charged before the court to which the warrant is to be returned.
   In the event a child is not taken before this Court or another court by a peace officer, the peace officer shall forthwith file with this Court the original and one copy of the complaint.

attempt to notify Palmer's custodian of his arrest. First, the State claims that the police simply did not believe that Palmer was a minor because he appeared to be much older and he was acting suspiciously.[5] Second, the State claims that the police were too busy with their investigation to attempt to notify Palmer's custodian. Third, the State claims that the police could not notify Palmer's custodian of his arrest because their computer system, which would have allowed the police to check Palmer's biographical information via the New York Police Department's computer, was not operating. Finally, the State claims that the inability of the police to notify Palmer's custodian was the result of Palmer's failure to provide the police with his grandmother's phone number. In light of the unambiguous language in § 933 and Rule 5(b) and the important policy considerations which underlie these requirements, the excuses offered by the State do not justify the failure of the police to attempt to notify Palmer's custodian of his arrest.

■ The fact that a minor appears to be of an older age, or acts "suspiciously," cannot justify a failure to comply with the clear mandate of § 933 and Rule 5(b). Section 933 states that a "peace officer may take into custody a child he believes to be dependent, neglected or delinquent ... having taken such a child into custody [the peace officer] *shall immediately* notify the child's custodian." 10 *Del.C.* § 933 (emphasis added). Rule 5(b) is equally emphatic in its requirement that "[a]ny peace officer who takes a child into custody *shall immediately* attempt to notify the child's custodian." Fam.Ct.R. 5(b) (emphasis added). While notification and presentment are not required if the police have no reason to believe that the person in custody is a minor, it is a clear violation of § 933 and Rule 5(b) where, as here, the police fail to attempt to notify the minor's custodian after the person under arrest claims to be minor. In such circumstances the subjective belief of the police is not controlling.

■ The State's claim that the police were too busy investigating the shooting to attempt to notify Palmer's custodian of his arrest does not excuse the failure to notify. A reasonable attempt to notify Palmer's custodian would have involved one person, not necessarily an investigating police officer, and would have not required a substantial amount of time. Given the clear notice requirements of § 933 and Rule 5(b), the State's argument that the police were too busy is not persuasive.

■ The State's claim that the police could not notify Palmer's custodian of his arrest because their computer system was inoperative also fails to excuse the failure to notify. Alternative means of communication, such as telephoning New York authorities to verify Palmer's age, were not considered. The police simply assumed Palmer was lying and proceeded with their interrogation on that assumption.

■ Finally, the State's claim that the inability of the police to notify Palmer's custodian was the result of Palmer's failure to provide the police with his grandmother's phone number is equally unavailing. While it is true that if Palmer's intransigence prevented the police from notifying his custodian he could not have his statement suppressed on that basis, *In re Hector C.*, N.Y.Fam., 95 Misc.2d 255, 406 N.Y.S.2d 958, 960 (1978), that is simply not the case here. Even if Palmer failed to give the police his grandmother's phone number, as he claims, he did provide true identification, including age, correct name and address. Thus, it cannot be said that Palmer acted to frustrate police efforts to verify his age.

In light of the forgoing, we are unable to conclude that the police complied with the notification requirement of § 933 and Rule 5(b). Both parties acknowledge that the police are required to "make reasonable efforts" to notify a minor's custodian. No reasonable effort was attempted in this case and, given the clear statutory man-

---

**5.** Palmer had no identification establishing his age or address. In addition, several members of the group gave false names and addresses and one person stated that Palmer's address was different than that provided to the police by Palmer.

date, the excuses tendered by the State do not justify the failure to attempt to notify Palmer's custodian.

■ As previously noted the issue of custodial notification was not raised at trial level and any related claim of error must amount to plain error before it will be disturbed. *Wainwright v. State*, 504 A.2d at 1100.[6] The doctrine of plain error "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental ... and which *clearly deprive an accused of a substantial right*, or which clearly show manifest injustice." *Id.* (emphasis added). The failure of the police to attempt to notify Palmer's custodian clearly deprived Palmer of his significant rights under § 933 and Rule 5(b), rights which are grounded, in part, on a juvenile's due process and self-incrimination rights. *Vorhauer v. State*, Del.Supr., 212 A.2d 886, 892–893 (1965). Deprivation of those rights is enough to warrant the suppression of his statement. Moreover, the trial court's failure to suppress the statement is a serious and fundamental defect which is apparent on the face of the record. Plain error is, thus, manifest.

### IV

■ We next address Palmer's claims that his presentment to a Family Court Commissioner was unnecessarily delayed. At the suppression hearing, the Superior Court made a factual determination that Palmer's presentment in Family Court was timely. Such a factual determination by a trial court will not be disturbed if it is sufficiently supported by the record and is the product of an orderly and logical deductive process. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972).

■ Section 933 requires the police to take a child in custody "directly before the [Family] Court if the Court is in session or ... before a court or commissioner." 10 *Del.C.* § 933. Rule 5(b) requires the police to take the child in custody before a court

"[w]ithout unreasonable delay." Fam. Ct.R. 5(b). There is no requirement that the minor be presented immediately before a magistrate. *Dennis v. State*, Del.Supr., 625 A.2d 278, Moore, J. (1993). "Rather, we have interpreted 'directly' to proscribe only unreasonable delay in the presentment of a [minor] to a neutral magistrate." *Id.* (citing *State v. Hanna*, Del.Super., 542 A.2d 794, 798 (1988), *rev'd on other grounds*, Del.Supr., 591 A.2d 158 (1991)). In determining the reasonableness of any delay, "the significant hours of detention are those occurring before the confession and not those thereafter." *Haug v. State*, Del.Supr., 406 A.2d 38, 41 (1979).

■ Palmer was arrested at 6:30 p.m. and did not make a statement until 5:02 a.m., ten and one-half hours later. The State offers the same unpersuasive arguments to establish the reasonableness of this delay as it did to justify the failure to attempt to notify Palmer's custodian of his arrest. We find these explanations equally unavailing.

The State places reliance on this Court's decision in *Hopkins v. State*, Del.Supr., 501 A.2d 774 (1985), in which this Court found that eight and one-half hours between the defendant's arrest and subsequent statement did not amount to an "unreasonable delay." *Id.* at 776–777. In *Hopkins*, the delay was attributable to the fact that after the defendant's arrest, the chief investigative officer, the person who later interviewed the defendant, remained at the defendant's residence for seven hours executing a search warrant. *Id.* at 775. This Court found that "it would seem that the arresting officer was the most appropriate person to interview defendant and that until the search and seizure was completed and return made, any interview would have been premature." *Id.* The State's reliance on *Hopkins*, however, is misplaced. The defendant in that case was not a minor and the police were not required to comply with

---

6. Defendant is represented by different counsel on appeal.

§ 933 and Rule 5(b). Indeed, the statute under consideration in that case was 11 *Del.C.* § 1909,[7] not § 933.

Accordingly, given the length of time between Palmer's arrest and his statement to the police and the fact that the delay was caused entirely by the police, coupled with a lack of sufficient justification for the delay, we conclude that the trial court's finding that the delay was reasonable is not supported by the evidence and was not the product of an orderly and logical deductive process. Because it is well-settled law in Delaware that incriminating statements obtained during an unreasonable delay are inadmissible, *State v. Hanna,* 542 A.2d at 798–799, the trial court erred by denying Palmer's motion to suppress.[8]

## V

Palmer's conviction is REVERSED and the matter REMANDED to the Superior Court for a new trial.

Because Palmer's conviction is reversed on the issue of guardian notification and presentment without unnecessary delay, we find it unnecessary to address Palmer's contention that his statement was involuntary.

---

**7.** The statute provides in pertinent part:

> If *not otherwise released,* every person arrested shall be brought before a magistrate without unreasonable delay, and in any event he shall, if possible, be so brought within 24 hours of arrest....

11 *Del.C.* § 1909.

**8.** The errors committed by the Superior Court cannot be considered harmless. Lammers and Colon testified at trial that Palmer did not know of the plan to sell drugs in Wilmington. Despite that testimony, the jury convicted Palmer via accomplice liability, presumably on the strength of his incriminating statement to the police. Accordingly, admission of the statement was not harmless to Palmer's defense.