# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
         )
         ) Def. I.D. #  2311001498
         )               2311001199
         )               2302002926 (VOP)
         )               2305009153 (VOP)
v.         )
         )
         )
MARCO ORTIZ- BEDOLLA,     )
         )
    Defendant.        )

Submitted: October 22, 2024
Decided: November 8, 2024

*Upon Defendant's Motion to Suppress*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Julie Johnson, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

Zachary A. George, Esquire, Hudson Jones Jaywork & Fisher, LLC, 225 South State Street, Dover, DE 19901; Attorney for Defendant Marco Ortiz-Bedolla.

**KARSNITZ, R.J.**

## Introduction

Many criminal defendants in Delaware have heard a knock on the door by police announcing that they have a warrant to enter and search their home. Far fewer criminal defendants, at least in Delaware, have received a package delivered to them in the mail which, in and of itself, operates as the trigger for the entry of the police and the search of their home. This latter practice of a "controlled delivery," which was used in this case, is the subject of the Motion to Suppress (the "Motion") by Marco Ortiz-Bedolla ("Defendant"). It involves what is often referred to as an "anticipatory search warrant," defined as "a warrant based upon an affidavit showing probable cause that at some time in the future (but not presently) certain evidence of crime will be located at a specified place."[1]

## Background

On November 1, 2023, a postal inspector in Wilmington intercepted a package suspected to contain drugs. The package was opened pursuant to a federal search warrant and was determined to contain methamphetamine. A warrant was issued for Defendant's arrest. On November 3, 2023, Defendant was arrested and charged with

---

[1] *State v. Gutman*, 670 P.2d 1166, 1172 (Alaska Ct. App. 1983) (quoting 2 W. LAFAVE, SEARCH AND SEIZURE § 3.7(c) at 94 (2d ed. 1987)); see *United States v. Garcia*, 882 F.2d 699, 704 (2d Cir. 1989); see also *United States v. McGriff,* 678 F. Supp. 1010, 1014 at n.5 (E.D.N.Y. 1988).

a single count of Attempted Drug Dealing in connection with this controlled delivery via the mail.

Earlier, on November 2, 2023, Delaware State Police applied for an anticipatory search warrant for Defendant's home address in Laurel, Delaware. The anticipatory search warrant was executed the next day. Pursuant to the search authorized by the warrant, Delaware State Police located a variety of controlled substances and drug paraphernalia.

Also on November 3, 2023, prior to execution of the anticipatory search warrant, Delaware State Police arrested Defendant in New Castle County based on his outstanding warrant for the package intercepted in the mail. The application for the arrest warrant also included assertions that over the period of about six months police had conducted, through a confidential informant, at least four "buys" of illegal drugs from Defendant. Pursuant to a search incident to his arrest, Delaware State Police discovered a controlled substance and U.S. Currency on Defendant's person. After his arrest Defendant made allegedly inculpatory statements to the police.

Defendant was arrested and charged with a variety of criminal offenses including Attempted Drug Dealing, Drug Dealing, and Drug Possession; multiple counts of Possession of Drug Paraphernalia; multiple counts of Possession of a Firearm by a Person Prohibited; and Possession of a Firearm during the Commission of a Felony.

At the time of his November 2023 arrest, Defendant was on probation for other drug dealing charges. His probation officer filed a report alleging that Defendant violated his probation based upon the new charges. Defendant contests the violation by raising the same claim of wrongful search and seizure.[2]

On August 6, 2024, Defendant filed the Motion, which sought to suppress from both trial on the new charges and the contested VOP hearing (1) all evidence obtained from the search of Defendant's residence and from the search of his person incident to his arrest, including controlled substances, paraphernalia, and currency, and (2) Defendant's statements made during his arrest. The State filed its Response on August 28, 2024. On October 22, 2024, I held a hearing on the Motion. The State called one witness. I denied the Motion with respect to the statements made by Defendant during his arrest from the bench, but reserved judgment on the search and seizure issues. Trial was continued. This is my decision on the remainder of the Motion, after a review of the Motion, the Response, the hearing testimony, and oral argument.

---

[2] Under 11 *Del. C.* § 4321(d) and Probation Procedure 7.19, there is a statutory exception to the search warrant requirement for persons on probation. However, this statutory exception does not apply in this case because this was not a probation search. Rather, it was conducted by the Delaware State Police; therefore, Defendant is entitled to his full constitutional protections. The exclusionary rule applies in a contested VOP. See *Thompson v. State,* 192 A.3d 544 (Del. 2018); *Walker v. State,* 205 A.3d 823 (Del. 2018).

## Burden of Proof

The burden of proof in challenging the validity of a search warrant rests with Defendant.[3] However, as in warrantless searches and arrests,[4] the burden of proof for establishing the occurrence of the triggering condition precedent of an anticipatory search warrant rests with the State as the party asserting that the triggering condition occurred.[5]

## Defense Arguments

Defendant asserts six reasons to find the search and seizure unconstitutional and therefore to suppress the evidence found in the residence. First, Defendant argues that neither of the conditions precedent for the search and seizure were met: the package was never in fact opened by Defendant,[6] and the mere passage of time is, in and of itself, insufficient grounds to execute a warrant. Otherwise, search warrants could be issued based on speculative future events, and the probable cause

---

[3] *State v. Sisson,* 883 A.2d 868 (Del. Super. 2005).
[4] *Hunter v. State,* 783 A.2d 558 (Del. 2001).
[5] See *United States v. Schwarte,* 645 F.3d 1022 (8th Cir. July 15, 2011). See also *United States v. Curtis,* 2023 WL 9546952 (W. D. Tenn. Nov. 8, 2023). See also *United States v. Kamen,* 2006 WL 1697176 (D. Mass. June 20, 2006).
[6] In my view, the fact that Defendant himself was not at home to personally take delivery of, and open, the package is a matter of proof and weight of the evidence at trial on the charges of Attempted Drug Dealing, not a matter for consideration under the Motion.

determination would not be grounded in a specific and likely event. An anticipatory search warrant based solely on the passage of time could theoretically be issued for *any* location, which would undermine constitutional protections.[7]

Second, there was no probable cause established that contraband would be found on the premises if the trigger event (delivery of the package) occurred, because the drugs inside the package were replaced with "sham" drugs. The Affidavit supporting the anticipatory search warrant does not state that any of the controlled buys involved methamphetamine, which was the drug intercepted in the mail.

Third, even if there was probable cause that contraband would be found on the premises if the trigger event occurred, there was not probable cause that either trigger condition (delivery of the package or the passage of time) would actually occur.

Fourth, the four corners of the search warrant did not establish probable cause that contraband *other than* the methamphetamine mailed from California was likely to be found on the premises.

Fifth, information provided about the delivery of the methamphetamine by a confidential informant was stale and therefore unreliable.[8]

---

[7] *United States v. Andrews,* 577 F.3d 231 (4th Cir. Aug. 12, 2009); *United States v. Caraher,* 973 F.3d 57 (2nd Cir. Aug. 25, 2020).
[8] See *State v. Ivins,* 2004 WL 1172351 (Del. Super. May 21, 2004).

Sixth, under the Delaware Constitution there was no nexus specifically to Defendant's residence, which is a heightened requirement under the Delaware Constitution.[9] There must be an individual nexus for the residence, not just the shed on the curtilage. None of the controlled buys described in the Affidavit supporting the anticipatory search warrant are alleged to have happened at the residence, and the Affidavit does not state where or from whom the controlled buys were made. There is no observation of anyone coming or going from the residence to meet the confidential informant. There are no observations of any interactions with anyone at the residence such as controlled buys or heavy foot traffic. Even if the search warrant established a nexus to the property generally, it was only to the shed in the back yard and not to the residence itself. The confidential informant stated that the contraband would be in the shed on the curtilage of the property.

**State Arguments**

The State counters Defendant's six arguments. First, the State argues that delivery of the package to the premises established probable cause for the search and acted as the trigger for execution of the anticipatory search warrant. Because of the nature of the controlled delivery of the package, the successful delivery of the

_____

[9] *State v. Bradley,* 2011 WL 1459177 (Del. Super. Apr. 13, 2011), aff'd 51 A.3d 423 (Del. 2012); *Wheeler v. State,* 135 A.3d 282 (Del. 2016); *State v. Friend,* 2016 WL 7232170 (Del. Super. Dec. 13, 2016).

package established probable cause that the package would be found on the premises during execution of the warrant and that contraband would be found on the premises during execution of the warrant. The United States Postal Inspector arranged with the Delaware State Police a controlled delivery and executed the anticipatory search warrant only after the delivery occurred. The Affidavit supporting the anticipatory search warrant stated that on November 3, 2023, "a controlled delivery of the package was being conducted," and defined the term "deliver" as dropping the package off at the doorstep of the residence or delivery by knocking on the door and passing it to a resident of the premises.

The actual opening of the box by Defendant or someone else and/or the passage of time were not the only triggers for execution of the anticipatory search warrant. The successful delivery of the package to the premises was an additional trigger for execution. The affidavit for the anticipatory search warrant expressly stated that a search was authorized "so long as the subject parcel *enters into* the target premises." Delivery was accomplished when Defendant's mother pushed the box inside the residence. Thus, opening of the package and the "mere passage of time" were not the only conditions precedent to the search, because a successful delivery had just occurred once the package had entered the premises. The warrant required, in the absence of proof of opening of the package, the passage of 30 minutes from the time of delivery. Officers surveilling the delivery timed the entrance of the

8

package into the residence by use of a clock timer and waited an additional minute (for a total of 31 minutes) before entering the premises.

Moreover, the Fourth Amendment specifies only two matters that a warrant must particularly describe: "the place to be searched" and "the persons or things to be seized."[10] This particularity requirement does not include the conditions precedent to execution of the anticipatory search warrant.[11] Thus, although the language in the affidavit described opening of the package and a thirty-minute time frame, the Fourth Amendment itself does not require such particularity, and the successful controlled delivery of contraband to the premises was an adequate basis for execution of the warrant.

Second, the State argues that substitution of sham drugs for methamphetamine resulted from the salutary effort to remove drugs from the stream of commerce and to keep them out of the hands of suspected drug dealers and has no adverse effect on the probable cause analysis.

Third, the four corners of the anticipatory search warrant provided probable cause that other contraband was likely to be found on the premises, given Defendant's prior history of drug dealing and the confidential informant's information. (See further discussion, below.)

---

[10] *United States v. Grubbs*, 547 U.S. 90 at 97 (2006).
[11] *Dalia v. United States,* 441 U.S. 238 (1979).

Fourth, not only did the anticipatory search warrant provide probable cause that other contraband would be found on the premises, but the confidential informant's information also provided probable cause that the trigger condition – delivery of the package containing drugs -- would occur. Once the package was in the mail, it was on a "sure course" of delivery to the premises. Regarding triggering events based on the delivery of a package in the mail, courts have held that anticipatory search warrants are constitutional where the contraband is, in fact, on a "sure course" for the target destination.[12]

Fifth, information provided about the delivery of the methamphetamine by a confidential informant was not stale. The Delaware Supreme Court has considered the ongoing nature of the criminal activity of drug trafficking and found that the police are reasonable to enlarge the time frame for receiving reports of repetitive suspicious conduct in order to present a stronger case for a search warrant.[13] It agreed with the general rule:

> Together with the element of time, we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation, it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and

---

[12] *United States v. Hale,* 784 F.2d 1465 (9th Cir. March 21, 2006); *United States v. Goodwin,* 854 F.2d 33 (4th Cir. Aug. 4, 1988); *United States. v. Dornhofer,* 859 F.2d 1195 (4th Cir. 1988); *McNeil v. Commonwealth.,* 10 Va. App. 674, 395 S.E.2d 460 (1990).
[13] *Hopkins v. State,* 501 A.2d 774 (Del.1985).

> continuous nature, a course of conduct, the passage of time becomes less significant.[14]

This Court has held that, given the continuous nature of the possession and sale of controlled substances, the passage of time is not significant.[15] Here, there were only two weeks between the confidential informant's latest information and the anticipatory search warrant. Affiant also established the continuous, ongoing nature of possession and sale of contraband from Defendant's residence. The Affidavit lists events of drug activity twice in February, twice in April, again in May and again in October in 2023.

Sixth, under the United States and Delaware Constitutions, there was a logical nexus between the evidence of criminal activity and Defendant's residence. An affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.[16] A neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit under the totality of circumstances.[17] Although the Affidavit here did not describe a controlled purchase to have occurred at the residence, the totality of the circumstances test allows the magistrate to draw reasonable inferences that it would be "objectively reasonable"

---

[14] *United States v. Johnson,* 461 F.2d 285 (10th Cir.1982).
[15] *State v. Ivins*, 2004 WL 1172351 (Del. Super. May 21, 2004).
[16] *Sisson v. State,* 903 A.2d 288, 296 (Del. 2006).
[17] *Id.*

for the police to find evidence of illegal drug activity at Defendant's residence.[18] Specifically, the Affidavit states that during the last two weeks of October 2023, the confidential informant stated that Defendant was "very worried that police will conduct another search at his residence and in case that happens the illegal narcotics would be in the shed to distance himself from the illegal narcotics." This statement demonstrates that evidence of illegal drug activity was located at Defendant's residence approximately two weeks before execution of the anticipatory search warrant, and that Defendant had the intention of moving this evidence from his residence to his shed. In addition, reasonable inferences that evidence would be found at the Defendant's residence can be drawn from the information that Defendant was expecting contraband in the mail addressed to his residence. The Affidavit states that Affiant "believes the intended recipient of the Subject Parcel intended to receive a delivery of methamphetamine." The address on the package was Defendant's residence. Given these details, it is reasonable to infer that Defendant may have received similar packages from other mail carriers and that packages were delivered to Defendant's residence, not the shed.

---

[18] *See State v. Bradley,* 2011 WL 1459177 (Del. Super. Apr. 13, 2011).

## Analysis

The Fourth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution, and Article I §6 of the Delaware Constitution, protect Delawareans from unreasonable searches and seizures. "No person shall search any person, house, building conveyance, place, or other thing without the consent of the owner (or occupant, if any) unless such search is authorized by and made pursuant to statute or the Constitution of the United States."[19]

A search warrant may be issued upon a showing of probable cause.[20] "An affidavit in support of a search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[21] In determining whether probable cause exists, the Court applies a totality of the circumstances test.[22]

Unlike an arrest warrant, a search warrant is not directed at a person, but rather at the particular place where police have probable cause to believe that evidence is located. Probable cause to search depends upon the existence of a logical nexus

---

[19] 11 *Del. C.* § 2301.
[20] *LeGrande* v. *State,* 947 A.2d 1103, 1107 (Del. 2008)
[21] *Id.*
[22] *Id.* See also *Sisson* v. *State,* 903 A.2d 288 (Del. 2006).

between the items sought and the place to be searched. In other words, probable cause to believe that a suspect has committed a crime will support an arrest, but not necessarily a search warrant for the suspect's home. Rather, the factual showing necessary to establish probable cause to search a residence is two-fold: first, there must be probable cause that a crime was committed, and second, there must be probable cause to believe that evidence of such crime can be found at the residence."[23]

At first blush, anticipatory search warrants may sound like a recipe for a violation of the Delaware or Federal Constitutions. Indeed, the only reported Delaware case on anticipatory search warrants states:

> I agree with the State's contention that the police are not required to obtain a search warrant in anticipation of events that may or may not take place. The police could not be sure that the defendants would appear on January 25, 1991. A warrant obtained under the circumstances would have been anticipatory in nature. In *United States v. Nixon,* 918 F.2d 895 (11th Cir.1990), the Court held that anticipatory search warrants are appropriate only where the contraband is on a "sure course" to a known destination, such as through the mail. *Id.* at 903 n. 6. *See also United States v. Hale,* 784 F.2d 1465 (9th Cir.1986). Such was not the case here.[24]

---

[23] *State v. Cannon,* 2007 WL 1849022 at *4 (Del. Super. June 27, 2007).
[24] *State v. DePasquale*, 1991 WL 138429 at *3 (Del. Super. July 18, 1991).

Such *is* the case here. The police obtained an anticipatory warrant in connection with the controlled delivery of a box containing sham drugs, substituted for 1.1 pounds of methamphetamine which were from an illegitimate address in California, which the postal inspectors had intercepted. Two telephone calls were made to the post office about the package from a telephone number which Defendant identified as his own. The package was equipped with three sensors: a light sensor, a motion sensor, and a "trip wire" sensor which would indicate when the package was opened. The anticipatory search warrant contained two conditions precedent to the entry and search of the premises: (1) a notice from the detection device that the box had been opened while on the premises, whether inside the residence or outside on the curtilage (the shed); or (2) the box remained inside or outside the premises for more than 30 minutes, whether opened or unopened.

The package was addressed to Defendant and delivered to Defendant's home address in Laurel, Delaware by a police officer dressed as a post office employee. Defendant was not at home. The package sat outside for 31 minutes, whereupon the police executed the warrant, entered the premises, and conducted a search. The box was never opened, but police observed Defendant's mother push the box inside the house with her foot, which activated the motion sensor. The police found other controlled substances, drug paraphernalia, and currency at the residence.

15

The seminal case on anticipatory search warrants is *United States v. Grubbs*.[25] Despite a plethora of earlier anticipatory search warrant cases at the U.S. District Court and U.S. Circuit Court levels, in *Grubbs* the U.S. Supreme Court for the first time held categorically that anticipatory search warrants do not contravene the Fourth Amendment. In reversing the Ninth Circuit, Justice Scalia, writing for the majority, stated:

> If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued.[26]

> Anticipatory warrants are, therefore, no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed. It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met. (If that were the extent of the probability determination, an anticipatory warrant could be issued for every house in the country, authorizing search and seizure *if* contraband should be delivered—though for any single location there is no likelihood that contraband will be delivered.) Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a

---

[25] 547 U.S. 90 (2006).
[26] *Id*. at 94.

proper object of a seizure will be on the described premises. In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, the pre-requisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is a probable cause to believe the trigger condition *will occur.* The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.[27]

As stated above, an anticipatory search warrant is a search warrant conditioned on a trigger event or events occurring after the issuance of the warrant. In one type of anticipatory search warrant, the trigger event establishes probable cause for the execution of the search warrant. In another type of anticipatory search warrant, there is already probable cause, and the trigger event simply authorizes execution of the search warrant. In a third, hybrid type of anticipatory search warrant, the trigger event does both: provides probable cause for the search and authorizes execution of the warrant. In my view, we have the third type of anticipatory search warrant here. The delivery of the package provided the probable cause for the crime of Attempted Drug Dealing (by receiving methamphetamine via the mail) and, after the passage of time, provided the trigger for execution of the warrant. Moreover, the four corners

---

[27] *Id. at* 96-97 (internal citations omitted).

of the warrant also established probable cause that other drugs and evidence of other crimes (Drug Possession, Possession of Drug Paraphernalia, etc.) would be found on the premises. The probable cause includes, *inter alia*, the four drug purchases and Defendant telling the confidential informant he considered moving the drugs to a shed. While the Affidavit does not state where the drug transactions occurred, the comment about moving drugs to the shed, coupled with a package addressed to Defendant's residence, and Defendant's calling several times to inquire about the package, all provide ample probable cause that Defendant was engaging in illegal drug trade *at his residence*.

Defendant argues that, in an anticipatory search warrant, the police are unconstitutionally given far more latitude than a neutral magistrate in determining when to execute a warrant. For example, where there is no prior history of possible criminal drug activity on the premises, the neutral magistrate's probable cause analysis is effectively ceded to the police. But that is not the case here. There was ample information about prior criminal drug activity involving Defendant and the confidential informant had provided reliable information about the delivery of drugs via U.S. mail to the residence and its curtilage (the shed on the property).

In my view, under a *Grubbs* analysis, the Affidavit supporting the anticipatory search warrant provided the magistrate with sufficient information to evaluate both

aspects of the probable cause determination: there was probable cause that (1) the trigger condition (delivery of the package) would occur, and (2) contraband or evidence of a crime would be found at Defendant's residence.

## Conclusion

I find that Defendant has not met its burden in challenging the validity of the anticipatory search warrant. I further find that the State has met its burden in establishing the occurrence of the triggering conditions precedent of the anticipatory search warrant, for the reasons discussed above.

The Motion is **DENIED**.

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz
Criag A. Karsnitz

cc:     Prothonotary