**Alyssa RAMBO, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 254,2007.

Supreme Court of Delaware.

Submitted: Sept. 19, 2007.

Decided: Dec. 13, 2007.

23. *Plummer, supra,* 861 A.2d at 1242.

24. *Id.*

25. *Gamles Corp. v. Gibson,* 2007 WL 3380115, at *2 (Del.Super.).

26. Del. Sup.Ct. R. 8.

Tasha Marie Stevens, Fuqua and Yori, PA, Georgetown, Delaware for appellant.

James T. Wakley, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice.

Defendant–Appellant Alyssa Rambo appeals her adjudications of delinquency in Family Court for Attempted Murder First Degree, Robbery First Degree, Possession of a Firearm During the Commission of a Felony, and Conspiracy Second Degree. She argues that her convictions must be reversed because the police did not comply with *Miranda*[1] when taking her statement and thus it should have been suppressed. She also argues that her conviction for Attempted Murder First Degree should be reversed because the trial judge found her guilty based on the elements of felony murder. The State agrees with Rambo that the trial judge erred because "at-

tempted" felony murder is not a recognized offense in Delaware.

We hold that Rambo's statements should have been suppressed as it is not clear from the record that she knowingly and voluntarily waived her rights. We also agree with Rambo and the State that the trial judge erred by finding her guilty of attempted first degree murder after incorrectly applying the elements of felony murder. Delaware does not recognize attempted felony murder as a crime. Accordingly, we reverse her convictions and remand to the Family Court for a new delinquency hearing without her suppressed statement.

## FACTS

On November 24, 2006, 15 year old Rambo called 32 year old Antonio Mollack and asked him to pick her up from the Coverdale Crossroads playground. Mollack picked Rambo up as planned. While they sat in his vehicle, Rambo reached over, turned off the car, and removed Mollack's keys from the ignition. At about that time, two masked men approached both sides of the car. While holding a gun to Mollack's head, one of the men demanded money and fired shots toward Mollack at close range. After the shooting, the two masked men and Rambo fled the scene.

Unharmed, Mollack called 911 and reported the incident. Delaware State Police Detective Timothy Conway arrived at the scene to investigate. That evening Detective Conway contacted Rambo at her primary residence, her grandparents' home. In the presence of her grandparents and another family member, Rambo denied any involvement in the incident, but identified a possible suspect.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Four days later, on November 28, 2006, Conway contacted Rambo's family and requested that they bring her to the police station for an interview and possible arrest. Rambo's grandmother and a 23 year old family friend, Shika Cannon, accompanied her to the police station. Conway advised them that only one adult would be allowed to accompany Rambo into the interview room. Cannon sat in on Conway's tape-recorded interview of Rambo.

During the interview, Conway read Rambo her *Miranda* rights and then stated:

> Conway: Ok do you guys the both of you, do you understand your rights? Ok and having these rights in mind, ok do you wish to talk?
>
> Voice: Yes
>
> Conway: Just remember you can stop, you don't feel comfortable answering a question, you don't have to.

The State later charged Rambo with first degree attempted murder, first degree robbery, first degree conspiracy, and possession of a firearm during the commission of a felony. On April 12, 2007, a Family Court judge conducted a suppression hearing focused on Rambo's statement at her November 28th interview with Conway. On direct examination, Conway acknowledged that the recording was not clear on Rambo's or Cannon's response when he asked both whether they understood Rambo's rights. He also testified that Rambo appeared to understand what he asked and indicated "non-verbally" that she understood.

The Family Court judge denied the motion to suppress and admitted the statements based on an implied waiver theory. At the end of Rambo's delinquency hearing, the trial judge found her delinquent on the charges of first degree robbery, second degree conspiracy, and possession of a firearm. The trial judge reserved his decision on the attempted first degree murder charge, but later adjudicated her delinquent on that charge as well.

## DISCUSSION

### I. *Miranda Violation*

 Rambo first contends that the trial judge incorrectly denied her motion to suppress and relied on her statements taken in violation of *Miranda* to convict her on four criminal charges. A ruling on a motion to suppress is reviewed for abuse of discretion.[2] We review an alleged constitutional violation relating to a trial judge's evidentiary ruling *de novo*.[3] A juvenile defendant's confession must receive "special scrutiny."[4] The State bears the burden of proving the necessary voluntariness, understanding, and waiver of *Miranda* rights.[5]

 The judicial inquiry into waiver has two distinct dimensions: (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion or deception;" and (2) "the waiver must have been made with a full awareness of both the

2. *Lilly v. State,* 649 A.2d 1055, 1059 (Del. 1994).

3. *Flonnory v. State,* 893 A.2d 507, 515 (Del. 2006).

4. *Smith v. State,* 918 A.2d 1144, 1149 (Del. 2007) (citing *Haug v. State,* 406 A.2d 38, 43 (Del.1979)).

5. *See Colorado v. Connelly,* 479 U.S. 157, 169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

nature of the right being abandoned and the consequences of the decision to abandon it."[6] The second part of the inquiry requires a "totality of the circumstances" standard that evaluates "the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given to him, the nature of his ... rights, and the consequences of waiving those rights."[7]

Conway could not testify that Rambo herself said "yes" when asked if she wished to talk after he read her *Miranda* rights. Upon review of the audiotape recording of the detective's interview with Rambo and Cannon, we conclude that Rambo did not explicitly waive her rights. The detective breezed through reading the *Miranda* rights quickly, followed quickly by the question, "Do you want to talk?" Conway also mentioned that he had explained Rambo's rights to her grandfather before the initial meeting at her home. While an audible "yes" is heard on the tape, the detective, without clarifying who responded, continued with more introductory statements. After listening to the entire audiotape, we conclude that Cannon, not Rambo, responded "yes," (that Rambo wanted to talk) presumably waiving Rambo's *Miranda* rights. Rambo's young voice, so distinctive that it could not be mistaken for that of her family friend, did not respond independently of Cannon. Rambo did not say at any time that she understood her rights or that she voluntarily wished to speak to Conway and waive those rights by doing so. After Conway finished his prefatory remarks, Cannon suggested that Rambo should cooperate. The conversation continues between Rambo and Conway with frequent reminders from Conway that Rambo

should tell the truth. Nowhere did Rambo explicitly waive her *Miranda* rights.

In the clear absence of an express waiver, the validity of Rambo's alleged waiver of her *Miranda* rights depends on a "totality of the circumstances" test to determine whether there was an "implied" waiver. After noting at the outset that it was a very difficult decision, the trial judge found facts that could support an implied waiver. He found that Rambo cooperated and responded to questions in the interview, and that despite her age, Rambo was street smart, intelligent, and familiar with the criminal justice system. The trial judge noted that despite the speed at which they were recited, Conway did read Rambo the *Miranda* warnings, the words of which were understandable on the audiotape. Conway also testified that Rambo shook her head (implying in the affirmative without explicitly saying so) throughout the interview and that Rambo never gave him the feeling that she did not understand what he was saying.

▇ Yet the record also supports a finding that only Cannon waived Rambo's *Miranda* rights and not Rambo herself. Stricter scrutiny must be applied to the facts testing the voluntariness of a confession in any case where a juvenile is involved. Conway hurriedly read the *Miranda* warnings, mentioning that he had already explained them to Rambo's grandfather, accepted the "yes" he received, and went quickly into his lengthy prefatory remarks. The record is not clear that Rambo affirmatively waived her rights or even was shaking her head affirmatively in response to Conway's remarks. After considering those weaknesses in light of the strict scrutiny accorded to juvenile confessions, we cannot conclude under the "total-

---

6. *Smith,* 918 A.2d at 1149 (quoting *Marine v. State,* 607 A.2d 1185, 1195 (Del.1992)).

7. *Id.* (quoting *Fare v. Michael,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

ity of the circumstances" test that Rambo knowingly and voluntarily waived her rights on an implied waiver theory.

 It is a well-settled principle in Delaware law that if a defendant attempts to invoke her *Miranda* rights, the interrogating officer has an obligation under Delaware law to clear up any confusion before continuing to ask questions.[8] In this respect, the Delaware Constitution offers more protection to defendants than does federal law. While Rambo did not attempt to invoke her *Miranda* rights, distinguishing these circumstances from previous cases, nevertheless there was confusion over whether Rambo herself had indeed waived her *Miranda* rights. When one combines stricter scrutiny of juvenile confessions with the police's obligation to clear up confusion about a suspect's invocation of *Miranda* rights in all circumstances, we believe that Delaware case law supports the conclusion that where there is any ambiguity about whether a juvenile defendant has herself waived her *Miranda* rights voluntarily and knowingly, the interrogating officer has an obligation to clarify the ambiguity contemporaneously on the record before continuing with the interview.[9] In this case, Conway may have easily cured the issue of Rambo's voluntary and knowing waiver of her *Miranda* rights by taking the time to ask Rambo herself to reply and noting her reply in the taped record. The trial judge highlighted the same weaknesses in his ruling from the bench on the motion to suppress. He even suggested that in the future Conway read the warnings more slowly, get a signed waiver, and orally acknowledge on the audiotape exactly who replied, even

though, in the trial judge's view, those steps are not explicitly required by law. While the trial judge, to be fair, correctly noted no specific case so holding before today, under the totality of the circumstances here and a fair reading after cases cited in footnotes 4 and 8, *supra,* the Motion to Suppress should have been granted.

## II. *Attempted First Degree Murder Charge*

The parties agree that the attempted first degree murder charge should be vacated because the trial judge found Rambo guilty based on an analysis of the elements of felony murder. The State charged Rambo with attempted intentional murder under 11 *Del. C.* § 636(a)(1).[10] The trial judge acknowledged that there was *no proof* that Rambo intended to kill the victim, but nevertheless went on to find that it was reasonably foreseeable for Rambo to think that an attempted murder would have been committed during the commission of the robbery. Thus, the trial judge found her guilty based on the elements of felony murder in 11 *Del. C.* § 636(a)(2), which states that "[w]hile engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person." [11]

Under Delaware law, a person may be found to have attempted to engage in a crime if the person:

(1) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

---

8. *See, e.g., Garvey v. State,* 873 A.2d 291, 296–97 (Del.2005); *Norcross v. State,* 816 A.2d 757, 762 (Del.2003); *Draper v. State,* 2002 Del. LEXIS 51 (Del.2002); *Crawford v. State,* 580 A.2d 571, 577 (1990).

9. *Id.; see supra* note 4.

10. 11 *Del C.* § 636(a)(1).

11. *Del C.* § 636(a)(2).

(2) Intentionally does or omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person.[12]

 Attempt requires intent and as the Criminal Code Commentary succinctly points out, "one cannot be convicted of an attempt to commit a crime which may only be committed recklessly."[13] Attempted felony murder is not recognized to be a crime in Delaware and thus Rambo's adjudication of delinquency for attempted first degree murder must be vacated.

After reviewing the record, we remand for a new delinquency hearing without the suppressed statement on the remaining three charges. Although the trial judge noted that the statement did weigh significantly into his decision, the State did offer other physical and testamentary evidence in its case against Rambo. There are many notations of "inaudible" throughout the transcript of the delinquency hearing, particularly during Rambo's testimony. Without a complete and accurate representation of the evidence presented, we cannot conclude whether or not the State proved Rambo's guilt beyond a reasonable doubt.[14] Therefore we remand to the Family Court for a new hearing.

## CONCLUSION

For the foregoing reasons, we VACATE Rambo's adjudication of delinquency for Attempted Murder First Degree, and REVERSE and REMAND to the Family Court for further proceedings consistent with this opinion on the remaining charges.

---

12. 11 *Del. C.* § 531.

13. DELAWARE CRIMINAL CODE WITH COMMENTARY 153 (1973).

14. In passing, we note the advisability of Family Court securing a more accurate and reliable reporting system for serious charges of delinquency such as "attempted intentional murder"—which most assuredly will be appealed on a finding of delinquency and where a reliable record is a must for appropriate review.