# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 0603015418A |
| | ) | |
| | ) | |
| ANTHONY WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 28, 2018
Decided: September 13, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Martin O'Connor, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Anthony White, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se.*

Anthony A. Figliola, Jr., Esquire, Greto Law, Wilmington Delaware, counsel for Defendant.

**MAYER,** Commissioner

This 13th day of September, 2018, upon consideration of Defendant's Motion for Postconviction Relief and the record in this matter, the following is my Report and Recommendation.

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

1.     In 2007, a jury found Defendant, Anthony White, guilty of Attempted Murder First Degree and Possession of a Firearm During the Commission of a Felony.[1] Defendant filed an appeal, and his conviction was affirmed by the Delaware Supreme Court on September 5, 2008.[2]

2.     The facts were aptly summarized by the Supreme Court as follows:

> On March 15, 2006, Jaywann Tucker and his friend, Ahmand Phoenix, were hanging out on the street after school. Tucker saw Qy-Mere Maddrey and decided to rob him. Tucker held a gun to Maddrey's face and took Maddrey's cell phone and marijuana. Maddrey then called his friend, White, and told him about the robbery. About half an hour later, Maddrey and White found Tucker and Phoenix on the street. Maddrey asked Tucker for Maddrey's cell phone and Tucker told him that he did not have it. White then pulled out a gun and started shooting at Tucker, who ran behind some buildings. White followed him and shot Tucker in the face, left shoulder and left foot.[3]

---

[1]   D.I. # 63.

[2]   *White v. State*, 2008 WL 4107980 (Del. Sept. 5, 2008).

[3]   *Id.* at *1-2.

2

3. On January 14, 2009, Defendant filed his (First) Motion for Postconviction Relief (the "First Motion").[4] Through his First Motion, Defendant alleged claims of ineffective assistance of counsel, prosecutorial misconduct, and errors made by the trial judge. That motion was denied[5] and on May 4, 2010, the Supreme Court affirmed the judgement of the Superior Court.[6]

4. In its 2010 decision, the Supreme Court noted that the State presented surveillance camera videotape for the jury as well as gun casings, Detective Curley's testimony (chief investigating officer) and the police evidence technician's testimony. The Supreme Court recognized that:

> The record reflects that the trial testimony of Tucker, Phoenix and Maddrey contradicted prior statements that each had given to Detective Curley. At trial, both Tucker and Maddrey testified that they witnessed White shooting at Tucker. In prior statements to Curley, however, Tucker told Curley that he didn't know who shot him and Maddrey told Curley that he – Maddrey – shot Tucker. Phoenix, on the other hand, after telling Curley in a prior statement that he saw White shooting at Tucker, testified at trial that he did not witness the shooting and had no knowledge of it whatsoever.

---

[4] D.I. # 103.

[5] D.I. # 111, 116.

[6] *White v. State*, 2010 WL 1781021 (Del. May 4, 2010).

> Not surprisingly, White's defense strategy focused on attacking the credibility of Tucker, Maddrey and Phoenix...[7]

Defendant also argued in that appeal that he was prejudiced when Jeree "Re-Re" Richardson was not compelled to testify at trial. According to Defendant, Richardson would have testified that Maddrey shot Tucker and was present when Tucker robbed Maddrey. In resolving that matter, the Supreme Court determined that the record did not support Defendant's claim that Richardson would have testified as proposed, and even if he had, Defendant did not demonstrate that the result of the trial would have been different.[8]

5.    On August 16, 2010, Defendant filed a (Second) Motion for Postconviction Relief (the "Second Motion").[9] The Second Motion challenged certain communications between the trial judge and the jury, as well as the introduction of certain contradictory statements of one of the trial witnesses. The Second Motion was denied[10] and the Superior Court judgment was affirmed on appeal.[11]

---

[7] *Id.* at *1.

[8] *Id.* at *3.

[9] D.I. # 120.

[10] D.I. # 123, 125.

[11] D.I. # 128.

4

6. Defendant has now filed his (Third) Motion for Postconviction Relief (the "Third Motion").[12] Defendant's Third Motion presents the following claims: (i) the court lacked jurisdiction to convict him of Attempted Murder First Degree and he cannot be convicted of a "non-crime"; and (ii) newly discovered evidence demonstrates Defendant is actually innocent of the crimes for which he was convicted. Approximately four (4) months after his Third Motion was filed, Defendant also filed a Supplemental Report and Reasons for Relief White's Strickland/Brady Claims, which appears to raise claims of ineffective assistance of counsel and *Brady* violations (the "Supplemental Report").[13]

7. On January 11, 2018, the Court asked Defendant to expand on his claim of new exculpatory evidence[14] and in response, Defendant submitted the following[15]:

---

[12] D.I. # 134, filed November 29, 2017. In addition to the post-conviction relief motions, Defendant also filed a Motion for Correction of Sentence (D.I. # 127), Motion for TIS Modification (D.I. # 130) and Motion for Reduction of Sentence (D.I. # 132). These motions were denied. *See* D.I. # 129, 131, 133. Defendant also sought relief in the United States District Court for the District of Delaware through two Petitions for a Writ of Habeas Corpus. *White v. Phelps*, 2010 WL 4909343 (D. Del. Nov. 24, 2010), *White v. Pierce*, 2014 WL 3828290 (D. Del. July 29, 2014).

[13] D.I. # 139. After noticing that the Court's copy may have not been complete, counsel for Defendant submitted what was intended as the Supplemental Report. *See* D.I. # 151.

[14] *See* D.I. # 137.

[15] *See* D.I. #s 138, 139-143. The statements were sealed by the Court.

(a) an unsigned/unsworn Investigative Insert summarizing an interview with Qy-Mere Maddrey (the "Maddrey Summary"). The Maddrey Summary purports to be an interview between an investigator and Maddrey from April 13, 2017. Maddrey is the uncle to Defendant's child and the notes reflect that Maddrey admitted to shooting the victim but changed his testimony at trial because of pressure from law enforcement;

(b) an unsigned/unsworn summary that may be a statement of Jeree "Re-Re" Richardson to Detective Curley (the "Richardson Summary"). According to the exchange, Richardson saw Tucker rob Maddrey;

(c) an Affidavit of Updated Statement from James Anthony Brown (the "Brown Affidavit") dated March 15, 2018. Mr. Brown claims to have been with Maddrey when he turned himself in to the police and confessed;[16] and

(d) an Affidavit of Updated Statement of Zekita Ann Maddrey (the "Zekita Affidavit"). Zekita Maddrey is the mother of Defendant's child, and sister to Maddrey. Zekita Maddrey claims her brother confessed to the crime.[17]

---

[16] The proffers are at times inconsistent with each other and/or the record. Mr. Brown states he brought Maddrey to the Police Station to turn himself in. However, the Maddrey Summary indicates that he was alone when he turned himself in and his mother later showed up for the questioning.

[17] Similar to Mr. Brown, there are inconsistencies with Zekita Maddrey's statement. She claims she was at the trial and when Maddrey was asked who shot Tucker, and he was about to point to Defendant, she attempted to interrupt the proceedings to tell Maddrey to make sure he tells the truth. However, the outburst took place when Maddrey was asked about Tucker robbing him, not identification of Defendant or the shooter. *See* March 9, 2007 Trial Transcript at pgs. 47-49.

6

With respect to the state witnesses – Maddrey, Tucker, and Phoenix – Defendant believes (i) trial counsel did not attack the credibility of the witnesses; (ii) each is known as a "pathological liar"; and (iii) Maddrey admitted he was the shooter and then recanted, but White was denied his right to refute Maddrey's repudiation at trial.

8. The State filed a Response to the Motion for Postconviction Relief (the "Response") and suggests that the Third Motion be denied as untimely, or subject to certain procedural bars, and/or denied on the merits.[18]

## DEFENDANT'S RULE 61 MOTION

9. Before considering the merits of a defendant's post-conviction claims, the Court must first determine whether there are any procedural bars to the motion.[19] After reviewing Defendant's Third Motion, it is evident that pursuant to Super. Ct. Crim. R. 61(d)(5) the motion may be summarily dismissed because it is procedurally barred and it plainly appears, after considering the record in the case and prior

---

[18] D.I. # 148. On May 15, 2018, Anthony A. Figliola, Jr., Esquire entered his appearance on behalf of Defendant for the "second post conviction relief motion" and states that "Counsel is aware of the current status of the filings" but seeks no further relief. D.I. # 145.

[19] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

proceedings, that the movant is not entitled to relief. As such, the Court should not consider the merits of the claims.[20]

10.     Defendant's motion is procedurally barred by Super. Ct. Crim. R. 61(i)(1) for having been filed more than one year after the conviction became final.[21] Defendant's Third Motion, having been filed more than nine (9) years after the conviction was affirmed, is untimely.

11.     In addition, as this is Defendant's third motion for postconviction relief, the claims should only be considered if the motion either (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and render the conviction or death sentence invalid.[22]

---

[20] *Id.* *See also Paul v. State*, 2011 WL 3585623 (Del. Aug. 15, 2011), at *1 ("Delaware law provides that the Superior Court must first consider whether the defendant has satisfied the procedural requirements of Rule 61 before considering the merits of his postconviction motion.")

[21] Defendant's conviction became final when the Delaware Supreme Court issued its mandate affirming the conviction or on September 5, 2008. Super. Ct. Crim. R. 61(m)(2).

[22] Super. Ct. Crim. R. 61(i)(2); Super. Ct. Crim. R. 61(d)(2).

12.    To the extent Defendant believes he has presented a new rule of constitutional law rendering his conviction invalid, he is mistaken.  Defendant relies on *Rambo v. State*[23] for the proposition that Attempted Murder First Degree is a "non-crime."  In *Rambo*, the Delaware Supreme Court held that attempted felony murder is not a recognized crime in Delaware.  The reasoning being that attempt requires intent and a person cannot attempt to commit a crime that can only be committed recklessly.  In this case, Defendant was convicted of attempted murder, a crime that includes intent as an element of the charge.[24]  As such, *Rambo* does not apply to the facts of this case and Defendant's claims in this regard fail.[25]

13.    Defendant's Third Motion and the Supplemental Report also raise both ineffective assistance of counsel claims as well as *Brady*[26] violations.  Although Defendant summarizes statements from potential witnesses, he does not clearly explain in what form the statements existed at the time of trial, whether the State was in possession of the statements, or that they were intentionally withheld from the

---

[23]  939 A.2d 1275 (Del. 2007).

[24]  *See* 11 <u>Del. C.</u> §636(a)(1).

[25]  *See also Sykes v. State*, 2018 WL 1410696 (Del. Mar. 20, 2018) (rejecting argument that *Rambo* applies to charge of attempted intentional murder in the first degree, an offense within the jurisdiction of the Superior Court).

[26]  Defendant appears to be referencing *Brady v. Maryland*, 373 U.S. 83 (1963).

9

discovery process. Not only has Defendant failed to substantiate his claims but these claims are procedurally barred and Defendant has not plead any exceptions that would allow their consideration. Defendant argued ineffective assistance of counsel in his First Motion and any similar claims, regardless of how they are re-couched, are now barred by Super. Ct. Crim. R. 61(i)(4) as formerly adjudicated. Any alleged "*Brady*" violations should have been presented at trial, on appeal, or through the post-conviction process. Those claims having not been previously asserted, despite many opportunities to do so, are now deemed waived pursuant to Superior Court Criminal Rule 61(i)(3). Defendant has not established cause for his failure to raise these claims sooner nor prejudice from a violation of his rights.

14.     Finally, Defendant argues "newly discovered evidence" demonstrates he is actually innocent of the crimes charged. This Court recently examined both State and Federal precedent and set forth a standard for determining what constitutes "new evidence" in the context of Super. Ct. Crim. R. 61(d)(2)(i).[27] A defendant must: (1) persuade the court that no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt; (2) present new reliable evidence that was not presented at trial; and (3) demonstrate that the evidence could not have been discovered earlier through the exercise of due diligence. The court can also consider

---

[27]  *State v. Sykes*, 2017 WL 6205776, at * 5-6 (Del. Super. Dec. 7, 2017).

the timing of the submission and likely credibility of the affiant which bear on the reliability of that evidence.[28]

15. Defendant's motion fails to meet the required standard for presentation of new evidence. First, the Maddrey Summary and the Richardson Summary are unauthenticated, unsigned, and unsworn and therefore are not reliable or credible. Second, the purpose of the affidavits was to point the finger at Maddrey as the shooter instead of White, but this issue was thoroughly explored at trial and is not "new" evidence.[29] The Supreme Court acknowledged that defense counsel attacked the credibility of each witness and the trial record clearly shows that each witness was confronted with their contradictory statements, questioned about motive, bias and basis to lie, and examined at length regarding any possible misrepresentations either to the police or at the time of trial. Further, Maddrey's confession to the shooting and subsequent renunciation were explored, probed and challenged zealously. Therefore, any statements that now purport to imply Maddrey had confessed to the crime, is not "new" evidence that was unavailable at trial. Defendant was given a full and fair opportunity to present this evidence to the jury,

---

[28] *Id.*

[29] *See* March 8, 2007 Trial Transcript at pgs. 43-46, 68-74 (Tucker cross-examination and re-direct); pgs. 119-145 (Phoenix and Curley direct examination) and March 9, 2007 Trial Transcript at pgs. 8-22 (Phoenix and Curley direct and cross examination); pgs. 38 – 76 (Maddrey direct, cross and re-direct examination).

and to attack the credibility of the witnesses, and cannot now do so again. Third, the Supreme Court previously addressed the Richardson proffer and the recently submitted summary does not offer anything to change the result of the trial or that court's decision.[30] Last, the Brown and Zekita Affidavits are not reliable, contain inconsistent information and come eight (8) years too late without justification.[31] The Affidavits would have merely affirmed Maddrey's confession which came out at trial and at most would have been nothing more than cumulative (and possibly inadmissible) evidence.

16. In summary, Defendant's submissions were not discovered since the trial but rather re-state information available at trial. None of the "new witnesses" provided a justification for the delay in cooperating, or were in fact present during the trial, and as such, the information could have been discovered before by the exercise of due diligence. Based on a review of the weight of the testimony and evidence

---

[30] Any arguments regarding Richardson's proposed testimony are also barred by Super. Ct. Crim. R. 61(i)(4) as formerly adjudicated because they were presented to the Supreme Court on appeal of Defendant's First Motion.

[31] When the "newly discovered" witnesses were asked why they did not come forward in the last 11 years, they responded that they either did not have an answer (Zekita Affidavit at p. 2), did not want to "take the fall" (Maddrey Summary at p. 2), or simply focused on family instead (Brown Affidavit at p. 3).

presented at the trial, a reasonable juror could have voted to find him guilty beyond a reasonable doubt.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

_____
Commissioner Katharine L. Mayer

oc:  Prothonotary
cc:  Mr. Anthony White (SBI# 00372792)
     Martin B. O'Connor, Esquire
     Anthony A. Figliola, Jr., Esquire