# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Cr. ID No. 0603015418A |
| | ) | |
| ANTHONY WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 19, 2018
Decided: November 21, 2018

## ORDER

**AND NOW TO WIT**, this 21st day of November, 2018, upon consideration of the Defendant's Third Motion for Postconviction Relief, the State's Response, the Commissioner's Report and Recommendation, Defendant's objections, and *de novo* review of the record in this case, **IT APPEARS THAT:**

1. In 2007, a jury found Anthony White guilty of Attempted Murder First Degree and Possession of a Firearm During the Commission of a Felony.[1] The Delaware Supreme Court affirmed White's conviction on September 5, 2008.[2]

---

[1] D.I. 63.

[2] *White v. State*, 2008 WL 4107980 (Del. 2008) (affirming conviction on direct appeal). In this case, the Delaware Supreme Court found the following facts: On March 15, 2006, Jaywann Tucker and his friend, Ahmand Phoenix, were hanging out, after school, on the street. Tucker saw Qy-Mere Maddrey and decided to rob him. During the robbery, Tucker held a gun to Maddrey's face while taking Maddrey's cell phone and marijuana. Afterward, Maddrey called his friend, White, and told him about the robbery. Approximately a half-hour later, Maddrey and White confronted Tucker and Phoenix and asked Tucker to return Maddrey's phone, but Tucker said he no longer had the phone. At this point, White pulled out a gun and started shooting at Tucker, who ran behind a building. White chased Tucker behind the building and shot Tucker in the face, left shoulder and left foot. *Id.* at *1-2.

2. On January 14, 2009, White filed his first Motion for Postconviction Relief ("First Motion") under Superior Court Criminal Rule 61 ("Rule 61"). White alleged claims of ineffective assistance of counsel, prosecutorial misconduct and trial judge errors. The Superior Court denied the First Motion. On May 4, 2010, the Supreme Court affirmed the Superior Court's judgment,[3] noting that, in addition to the eye-witness testimony of Tucker, Maddrey and Phoenix, the State presented to the jury the following evidence: (1) a surveillance camera videotape, (2) gun casings, (3) testimony from the chief investigating officer, Detective Curley, and (4) the police evidence technician's testimony.[4] The record reflects that Tucker, Maddrey and Phoenix's trial testimony contradicted their prior statements to Detective Curley about the shooting of Tucker. Tucker told Curley he did not know who shot him (Tucker). Maddrey told Curley that he (Maddrey) shot Tucker. Phoenix told Curley that White shot Tucker. At trial, Tucker and Maddrey both testified that White shot Tucker and Phoenix testified that he did not witness the shooting and did not know anything about the shooting. The Supreme Court noted that "not surprisingly, White's defense strategy focused on attacking the credibility of Tucker, Maddrey, and Phoenix..."[5] and trial record shows that defense counsel thoroughly examined

---

[3] *White v. State*, 2010 WL 1781021 (Del. 2010).
[4] *Id.* at *1.
[5] *Id.*

2

their contradictions, biases, motives and potential misrepresentations to the police or at trial.[6]

4. On August 16, 2010, White filed his second Motion for Postconviction Relief ("Second Motion") under Rule 61. In his Second Motion, White challenged certain communications between the trial judge and the jury, and the introduction of contradictory statements of a trial witness. The Superior Court denied the Second Motion and the Supreme Court affirmed.[7]

5. Now before the Court is White's third Motion for Postconviction Relief ("Third Motion"),[8] filed on November 6, 2017. Four months later, White filed a Supplemental Report and Reasons for Relief.[9] Together, White's Third Motion asserts the following claims: (1) the Superior Court lacked jurisdiction to convict him of Attempted First Degree Murder and he cannot be convicted of a "non-crime;" (2) newly discovered evidence shows White's innocence of the crimes for which he is convicted; and (3) *Strickland/Brady* claims for ineffective assistance of counsel and *Brady* violations.[10]

---

[6] *See* Trial Tr., D.I. 93, at 43-46, 68-74, Mar. 8, 2007 (Tucker cross-examination and re-direct); *Id.* at 119-145 (Phoenix and Curley direct examinations); *See also* Trial Tr., D.I. 94, at 8-22, Mar. 9, 2007 (Phoenix and Curley direct and cross examinations); *Id.* at 38-76 (Maddrey direct, cross and re-direct examination).
[7] *Id.*
[8] D.I. 134.
[9] D.I. 139.
[10] D.I. 134, 139.

6. Upon the Court's request, White expanded on his claim of new exculpatory evidence by submitting the following[11]:

(1) an unsigned/unsworn statement summarizing a purported interview of Qy-Mere Maddrey ("Maddrey Summary") conducted by an investigator on April 13, 2017. The Investigative Insert states that Maddrey is the uncle of White's child, Maddrey admits to shooting Tucker, and Maddrey changed his testimony at trial because of pressure from law enforcement;

(2) an unsigned/unsworn summary which purports to be a statement of Jeree "Re-Re" Richardson to Curley ("Richardson Statement"), which purports that Richardson witnessed Tucker rob Maddrey;

(3) James Anthony Brown's Affidavit of Updated Statement ("Brown Affidavit") dated March 15, 2018. Brown testifies that he dropped Maddrey off at the police station when Maddrey turned himself in and confessed;

(4) Zekita Ann Maddrey's Affidavit of Updated Statement ("Zekita Affidavit") dated March 15, 2018. Zekita testifies that she is

---

[11] D.I. 140, 141, 142, 143.

Maddrey's older sister and the mother to White's child. She claims that Maddrey confessed to the crime.

7. White further argues that with respect to State witnesses Maddrey, Tucker and Phoenix: (1) trial counsel did not attack the credibility of the witnesses; (2) all three witnesses are pathological liars; and (3) Maddrey confessed and later recanted, but White was denied his right to challenge Maddrey's change of testimony at trial.[12]

8. The State filed a Response to White's Third Motion arguing that it should be denied as untimely, and/or subject to certain procedural bars, and/or denied on the merits.[13]

9. Pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62, the Third Motion was referred to a Superior Court Commissioner for proposed findings of fact and recommendations ("the Report").[14] On September 13, 2018, the Commissioner issued the Report recommending summary dismissal of White's Third Motion.[15]

10. On September 19, 2018, White submitted an Exception to Commissioner's Report[16] and two amendments.[17] Because the initial Exception was

---

[12] *See* D.I. 134, at 9-12; D.I. 139, at 4-5.

[13] D.I. 148.

[14] D.I. 149.

[15] *State v. White*, 2018 WL 4405835 (Del. Super. 2018).

[16] D.I. 153.

[17] D.I. 155, 157. The amendments are dated September 27th and October 15th, respectively. In addition to White's appellant counsel's filings, White filed *pro se* Objections to Commissioners Report and Recommendations that White's Postconviction Motion Be Denied. D.I. 154.

filed within 10 days of the Report, the Court must conduct a *de novo* review of "those portions of the report" objected to.[18] The judge "may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner."[19]

11. The Court need not consider the merits of White's Third Motion because it does not overcome the Rule 61 procedural bars.[20]

12. Rule 61(i)(1) provides that a motion for postconviction relief must be filed within one year of a final judgment of conviction.[21] A judgment of conviction becomes final, in relevant part, when "the defendant files a direct appeal" to the Delaware Supreme Court and the Court "issues a mandate or order finally determining the case on direct review."[22] White's judgment was final in 2008.[23] The Third Motion was filed nine years after White's final judgment.

---

However, the Court will not consider the *pro se* filing because White is represented by counsel. *See Matter of Haskins*, 551 A.2d 65, 66 (Del. 1988) (explaining that a criminal defendant cannot have "hybrid representation," which occurs when the defendant is represented by counsel and also represents his or her self).

[18] *See* Super. Ct. Crim. R. 62(a)(5); *see also State v. Williams*, 2018 WL 3211962, at *4 (Del. Super. 2018).

[19] Super. Ct. Crim. R. 62(a)(5)(iv).

[20] The Court must first address Rule 61(d) before addressing the merits of White's Third Motion. *See* Super. Ct. Crim. R. 61; *Younger v. State*, 580 A.2d 552, 554 (Del. 1990). If the Court determines, after review of the Third Motion and the record of prior proceeding, that White's motion is procedurally barred, then the Court may summarily dismiss the motion. *See* Super. Ct. Crim. R. 61(d)(5).

[21] *Id.* 61(i)(1).

[22] *Id.* 61(m).

[23] *White v. State*, 2008 WL 4107980, at *1 (Del. 2008).

6

13. Rule 61(i)(2) bars successive motions unless the motion satisfies the pleading standards of Rule 61(d)(2)(i)-(ii).[24] To overcome this procedural bar, White is required to plead with particularity either:

(i) new evidence exists that creates a strong inference that the movant is actually innocent of the acts for which he was convicted; or

(ii) a new rule of constitutional law retroactively applies to the case on collateral review by either the United States or Delaware Supreme Court and the new law invalidates the movant's conviction.[25]

14. White argues that *Rambo v. State*,[26] creates constitutional law establishing that Attempted Murder First Degree is a "non-crime." White does not meet the pleading standard of Rule 61(d)(2)(ii) because *Rambo* does not apply to this case and it does not invalidate White's conviction. In *Rambo*, the Court held that Attempted *Felony* Murder is not a recognized crime in Delaware. A person cannot attempt a Felony Murder because attempt requires intent and a person cannot attempt to commit a crime that can only be recklessly committed.[27] In *Rambo*, the defendant

---

[24] Super. Ct. Crim. R. 61(i)(2).

[25] *Id.* (d)(2)(i)-(ii).

[26] 939 A.2d 1275 (Del. 2007).

[27] Under Delaware law, the crime of attempt is defined as (1) *intentionally* engaging in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or (2) *intentionally* does or omits to do anything which, under the circumstances as the person believes to be a substantial step in a course of conduct planned to culminate in the commission of the crime by the person. *Rambo*, 939 A.2d at 1280-81 (citing 11 *Del. C.* § 531) (emphasis added).

was convicted of Attempted Felony Murder under 11 *Del. C.* § 636(a)(2) for the reckless murder of a victim during a robbery. In contrast, White was convicted of Attempted Murder First Degree under 11 *Del. C.* § 636(a)(1).[28] At trial, the State's evidence demonstrated that White "attempted to 'intentionally cause[] the death of another person,' – Jaywann Tucker, by repeatedly shooting him with a firearm."[29]

15. White's case is similar to *Sykes v. State*,[30] not *Rambo*. In *Sykes*, the Court rejected the defendant's argument, which was based on *Rambo*, that his plea to Attempted Murder First Degree was invalid and the Superior Court lacked jurisdiction to accept his plea. The Court held that the *Rambo* decision was inapplicable in Syke's case because defendant pled guilty to Attempted *intentional* Murder in the First Degree – an offense within the jurisdiction of the Superior Court. White, like the defendant in *Sykes*, was convicted of Attempted *intentional* Murder, not Attempted Felony Murder. For the above reasons, *Rambo* does not support White's argument that attempted intentional murder is a non-crime.

---

[28] A person is guilty of murder in the first degree when: the person intentionally causes the death of another person. *See* 11 *Del. C.* § 636(a)(1). Murder first degree is an intentional crime and felony murder first degree is a reckless crime. The difference is that a felony murder requires the defendant to recklessly murder another during the commission of an *independent* crime. Comparatively, murder first degree and attempted murder require the defendant's conduct to be intentional when killing or attempting to kill another.

[29] D.I. 148, at 12. *See also* D.I. 98, at 5:16-7:11 (jury instructions required prosecution to prove White intentionally tried to murder Tucker); D.I. 90.

[30] 2018 WL 1410696 (Del. 2018).

8

16. Next, this Court turns to Rule 61(d)(2)(i). In *State v. Flowers*,[31] the Court followed the federal pleading standard to determine the validity of a claim based on new evidence. Evidence is new when it "was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence...."[32] To establish a valid claim, the new evidence must show that it is "more likely than not that no reasonable juror would have convicted" the defendant.[33] To determine the validity of a new evidence claim, the Court considers "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted...at trial."[34] In this case, the evidence provided by White is not new evidence. The Maddrey and Richardson[35] Summaries are not reliable or credible. Maddrey's purported statements to a private investigator are the same statements that were known prior to trial and were thoroughly examined at trial.[36] The Brown

---

[31] 2018 WL 1169644 (Del. Super. 2018).

[32] *Id.* at *1.

[33] *Id.*

[34] *Id.*

[35] In White's First Motion, the Supreme Court dealt with the Richardson testimony. *See White v. State*, 2010 WL 1781021, at *3 (Del. 2010). The Court explained that even if Richardson testified that Maddrey shot Tucker, White still failed to show that the trial result would have been different. The most recent assertion does not provide anything to change the result of the trial or the Court's decision; Richardson's testimony would merely support the undisputed fact that Tucker robbed Maddrey.

[36] White's defense counsel thoroughly and zealously examined Maddrey's confession and renunciation. The assertion that Maddrey's confession is new evidence unavailable at trial is baseless because, at trial, White had a full and fair opportunity to present evidence to the jury and attack the credibility of witnesses.

9

and Zekita Affidavits are inconsistent with the trial record and unreliable[37] because Maddrey's truthfulness and statements to police were thoroughly explored at trial.[38] Furthermore, White does not assert that the testimony of Brown and Zekita was unavailable prior to trial or unable to be discovered.

17. Because Maddrey confessed to the shooting prior to trial and was questioned on direct and cross examination about his statements, his "new" statement is not a post-trial recantation and the Court need not address White's argument that *Blankenship v. State*,[39] applies. However, assuming *arguendo*, that Maddrey's statement is authenticated and a recantation, White fails to meet the *Blankenship* standard. Under *Blankenship*, the defendant must prove: (1) that the Court is reasonably well satisfied that a material witness provided false testimony, (2) that without the testimony the jury might have reached a different conclusion, and (3) that the movant was taken by surprise at trial by the false testimony and was unable to meet it or did not know of its falsity until after trial.[40] Here, the outcome

---

[37] Zekita states that Maddrey was robbed and pistol whipped the day before the shooting, that Maddrey robbed Tucker the day of the shooting, came home and called White, who picked Maddrey up with his car. Her statements about the confrontation are contradicted by the surveillance video. *See* D.I. 142. Brown states that Maddrey pulled the gun and shoot Tucker. D.I. 143.

[38] Furthermore, the affidavits are unreliable, inconsistent, and are provided eight (8) years too late without justification. Zekita Maddrey stated that she did not have an answer for not coming forward sooner and Brown's excuse is he wanted to focus on family instead.

[39] 447 A.2d 428 (Del. 1982) (adopting the *Larrison* test previously adopted under Delaware law in *Johnson v. State*, 410 A.2d 1014 (Del. 1980)).

[40] *Id.* at 433-34.

10

would not have been different because the victim (Tucker) identified White as the shooter and there was additional evidence, including a video which depicts the crime in real-time. In addition, the Court is reasonably well satisfied that Maddrey's trial testimony was not false.[41] Maddrey's testimony was independently corroborated by evidence found at the scene of the crime and other witnesses' testimony.[42] Finally, White was not surprised by the testimony of Maddrey because the transcript clearly shows that White's counsel confronted Maddrey about his prior confession during the trial.[43] Therefore, even if the Maddrey Summary was credible and authenticated it fails to meet the *Blankenship* standard. The evidence is not new because it was known prior to trial, examined at trial, and the post-trial "recantation" is not credible or authenticated.

18. Next, the Court looks at Rule 61(i)(3) which prevents the consideration of any claim not asserted in the proceedings leading up to the judgment of conviction unless the movant (White) can show "cause for relief from the procedural default"

---

[41] *Id.* at 434. *See also Downes*, 1999 WL 743629, at *8 (holding that its determination that the witness truthfully testified precluded analyzing the remainder of the *Blankenship* test). In *Downes*, the "alleged post-trial statement" of the witness was not dated or notarized and was just a summary of defendant's cross-examination at trial and closing arguments. *Downes*, 1999 WL 743629, at *8.

[42] *See Blankenship*, 447 A.2d at 434. In *Blankenship*, the Delaware Supreme Court affirmed the Trial Judge's discretion to believe the trial testimony was not false because the testimony was "independently corroborated by the evidence found at the scene of the crime and by the victim's testimony as to the manner in which the crime was committed." *Id.*

[43] *See* Trial Tr., D.I. 93, at 43-46, 68-74, Mar. 8, 2007 (Tucker cross-examination and re-direct); *Id.* at 119-145 (Phoenix and Curley direct examinations); *See also* Trial Tr., D.I. 94, at 8-22, Mar. 9, 2007 (Phoenix and Curley direct and cross examinations); *Id.* at 38-76 (Maddrey direct, cross and re-direct examination).

11

*and* "prejudice from violation of the movant's rights."[44] In his Third Motion and Supplemental Report, White raises ineffective assistance of counsel and *Brady* violations for the second time.[45] White fails to substantiate these claims and both claims are procedurally barred because he fails to plead any exceptions that would allow the Court to consider these claims.[46] Furthermore, with respect to White's arguments about the State witnesses, the Delaware Supreme Court previously found that White's trial counsel's defense strategy was to attack the credibility of Tucker, Maddrey and Phoenix.[47] The supplemental motion is devoid of any assertions that White was unaware of the prior statements made by Tucker, Maddrey and Phoenix.

---

[44] Super. Ct. Crim. R. 61(i)(3).

[45] *See White*, 2010 WL 1781021, at * 2.

[46] *State v. White*, 2018 WL 4405835, at *4 (Del. Super. 2018). While White summarized statements from potential witnesses, there is no explanation as to the form in which the statements existed at the time of trial, if the statements were possessed by the State or that the State intentionally withheld the statements during the discovery process. Any *Brady* violations should have been dealt with at trial, on appeal, or through the post-conviction process. Additionally, in White's supplemental motion, he states that trial counsel was aware of or possessed the statements of potential witnesses and alleged evidence prior to trial. *See* D.I. 139, 151. Under Rule 61(i)(3), the claims White failed to assert previously are now deemed waived.

[47] In White's Amended Exception to Commissioner's Report (D.I. 57), he argues that relief should be granted based on *Fowler v. State*, 2018 WL 4057249 (Del. 2018). White fails to meet the pleading standard for written objections to the Report because the claim was not plead with particularity. *See* Super. Ct. Crim. R. 62(5)(ii). Assuming *arguendo* that the claim was plead with particularity, *Fowler* does not apply to White's motion. In *Fowler*, the court ordered a new trial because the Jencks violations were not harmless error when combined with the credibility issue of the State's expert witness. *See id.* at *1-2. The court discovered post-conviction that the State failed to provide the recorded statements of the four witnesses to the defense and the State's expert witness was arrested for Theft by False Pretense and Falsifying Business Records to Make or Cause False Entry. *Id.* at *1. The unusual combination of the credibility issues of the expert and inability of trial counsel to effectively impeach key witnesses with prior recorded statements showed that the two major forms of evidence used to convict the defendant were not harmless beyond a reasonable doubt. *Id.* at *9. White's case is distinguishable from *Fowler* because unlike the defendant in *Fowler*, White fails to claim that the State possessed recorded witness statements

12

19. Rule 61(i)(4) states that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[48] White asserted ineffective assistance of counsel and *Brady* violations in his First Motion and therefore those claims are barred.

20. White's Third Motion is procedurally barred by Rule 61(i)(1)-(4). Thus, White's claims are not exempt from those procedural bars.

**NOW THEREFORE**, after careful and *de novo* review of the record in this action, the Court adopts the Commissioner's Report and Recommendation. Defendant's Motion for Postconviction Relief is **SUMMARILY DISMISSED.**

**IT IS SO ORDERED.**

Ian R. Jurden, President Judge

---

and he does not claim that the State did not provide the statements. *See* D.I. 151. Furthermore, the Supreme Court previously established that the contradictory statements of Tucker, Maddrey and Phoenix were thoroughly examined at trial. *See generally White v. State*, 2010 WL 1781021 (Del. 2010). In sum, White fails to assert that the State did not provide Jencks statements.
[48] Super. Ct. Crim. R. 61(i)(4).